## RAILWAY COMPANY v. PHILADELPHIA.

1. A company incorporated by a statute of Pennsylvania approved April 8, 1864, was authorized to construct a railway on certain streets of Philadelphia, subject to the ordinances of the city regulating the running of passenger railway cars. The charter requires, among other things, that the " company shall also pay such license for each car run by said company as is now paid by other passenger railway companies " in said city. That license was $30 for each car. An ordinance passed in 1867 increased the license charge to $50, and in 1868, by a general statute the legislature provided that the passenger railway corporations of Philadelphia should pay annually to the city $50 as required by their charters for each car intended to run on their roads during the year, and that the city should have no power to regulate such corporations unless authorized by the laws of the State expressly in terms relating to those corporations. The company paid the increased charge until 1875. On its refusing to pay it thereafter this suit was brought. *Held,* that the charter did not amount to a contract that the company should never be required to pay a license fee greater than that required of such companies at the date when the company was incorporated.

2. In their widest sense, the words employed in the charter mean that the company should not then be required by the city to pay any greater charge as license than that paid by other companies possessing the same privilege. *Quære,* without further legislation, could a greater sum have been exacted from the company?

3. *Semble,* that even if the charter were sufficient to import a contract, the legislature, under the constitutional provision then in force touching the alteration, revocation, or annulment of any charter in such manner that no injustice be done to the corporators, had ample power to pass the act raising the license fee from thirty to fifty dollars.

ERROR to the Supreme Court of the State of Pennsylvania.

This was an action brought in the Court of Common Pleas, No. 2, for the county of Philadelphia, by the city of Philadelphia against the Union Passenger Railway Company of Philadelphia.

The following case was stated for the opinion of the court, with the right to either party to sue out a writ of error to the judgment.

That by " An ordinance supplementary to an ordinance entitled ' An ordinance to regulate passenger railways,' approved July 7, 1857," approved April 1, 1859 (139), and by the third section thereof, it is provided, —

" That each and every passenger railway company shall pay into the office of the chief commissioner of highways in the month of January of each year, for the use of the city, the sum of thirty dollars for each car intended to be run upon any road, and for each and every car placed upon any road before the time herein provided for paying the license, a proportionate sum shall be paid until the succeeding January, and that no car shall be placed or run upon any road or street until it shall be regularly licensed, and a certificate duly numbered hung in a conspicuous place in said car."

That the defendants were created a body politic by an act passed April 8, 1864 (P. L. 297), with the authority to construct a railway on certain named streets in the city of Philadelphia. Among other things in said act, it is enacted, —

" SECT. 4. . . . Said railway shall conform in gauge to the passenger railways now laid in the city of Philadelphia. . . .

" SECT. 8. . . . And the said company is hereby authorized and empowered to construct and lay the said railway, without obtaining the consent of the city councils of the city of Philadelphia; but whenever the said railway shall be laid and used, by running passenger cars thereon, the said company shall be subject to the ordinances of the city of Philadelphia regulating the running of passenger railway cars."

" SECT. 10. That the said company shall pay annually into the treasury of the city of Philadelphia, for the use of said city, whenever the dividends declared by said company shall exceed six per cent per annum, on the par value of the capital stock thereof, a tax of

six per cent on such excess over six per cent, . . . and the said company shall also pay such license for each car run by said company as is now paid by other passenger railway companies in the city of Philadelphia."

By "a further supplement to an ordinance to regulate passenger railways, approved July 7, 1857," approved Jan. 2, 1867 (1), it is enacted, —

"That each and every passenger railway company shall pay to the chief commissioner of highways the sum of fifty dollars for each car run upon their respective roads." . . .

That by " An Act to define the duties and liabilities of passenger railway corporations in the city of Philadelphia," approved April 11, 1868 (P. L. 849), it is enacted, —

" That the several passenger railway corporations in the city of Philadelphia shall pay annually to the said city, in the month of January, the sum of fifty dollars, as required by their charters, for each car intended to be run over their roads during the year, and they shall not be obliged to pay any larger sum ; and said city shall have no power by ordinance or otherwise to regulate passenger railway companies, unless authorized so to do by the laws of this Commonwealth, expressly in terms relating to passenger railway corporations in the city of Philadelphia." . . .

That in each year previous to the year 1875 the defendants paid the said plaintiff the sum of fifty dollars for each of the cars run by them during such year.

The defendants, in the month of January, 1875, did run seventy-nine cars on their road, and admit their liability to pay to the plaintiffs for each car the sum of thirty dollars and no more.

If the court shall be of opinion that the plaintiffs are entitled to recover the sum of fifty dollars for each car, then judgment to be entered for the plaintiffs at that rate ; if not, then judgment to be entered for the plaintiffs at the rate of thirty dollars for each car. The damages to be assessed by the prothonotary.

It is agreed that any act of assembly or ordinance of the city of Philadelphia which may be pertinent to the case here stated shall be considered as embraced herein.

Judgment was rendered in favor of the city at the rate of fifty dollars for each car. It was affirmed by the Supreme Court of the State, and this writ was then sued out. The errors assigned are set out in the opinion of this court.

*Mr. David W. Sellers* and *Mr. F. Carroll Brewster* for the plaintiff in error.

The contract between the State and the company arose by the acceptance of the charter by the corporators acting thereunder. It must therefore be construed as of *that date.* The franchise conferred was subject to certain terms, among which were that whenever the dividends declared should exceed six per cent per annum on the par value of the stock, a tax of six per cent should be paid on such excess, and that a license for each car run, such as was *then* paid by other passenger railway companies, should be paid.

The annual charge on each car is not technically a tax. Taxation is imposed by the State and city under general laws, and no exemption is here claimed from their exercise. The taxing power of the city conferred by the statute of Aug. 25, 1864, extends to all subjects of taxation specified by sect. 32 of the act of April 29, 1844. It does not, therefore, reach the cars of the company, as they are necessary to the enjoyment of the franchise. Under that section every thing incidental to, or inseparable from, the franchise is exempt from taxation. *Navigation Company* v. *County,* 8 Watts & S. (Pa.) 334; *Navigation Company* v. *Commissioners,* 11 Pa. St. 202.

The power of the city to open and repair streets does not interpose any barrier against the paramount authority of the State to grant the right to construct railways over them on such terms and conditions as the legislature may prescribe. *Case of The Philadelphia and Trenton Railroad Company,* 6 Whart. (Pa.) 25; *Stormfeltz* v. *Turnpike Company,* 13 Pa. St. 555; *Mercer* v. *Railroad,* 36 id. 99. The terms and conditions which are set forth in the company's charter exclude by necessary implication the exercise by the city of any power which would interfere with the enjoyment of the franchise, or diminish its value, even if such power had been, as it was not, vested in the city by pre-existing legislation.

The ordinance of the city passed pursuant to a later statute,

and imposing burdens upon the franchise greater than those specified in the charter, is in direct conflict with the contract clause of the Constitution of the United States, and void.

*Mr. Charles E. Morgan, Jr.,* and *Mr. W. Nelson West, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Stipulations, in a statute of a State, exempting certain property, rights, or franchises from taxation, or engaging that the same shall be taxed only at a certain rate, if made for a valuable consideration received by the State whose legislature enacted the stipulation, is a contract, and as such comes within the rules of decision specifying the description of contracts entitled to protection from modification or repeal under the guaranty of the tenth section of the first article of the Constitution.

Exemptions of the kind, however, are to be strictly construed, the rule being that the right of taxation exists unless the exemption is expressed in clear and unambiguous terms, and that in order that it may be effectual it must appear that the contract was made in consequence of some beneficial equivalent received by the State, it being conceded that if the exemption was granted *only* as a privilege it may be recalled at the pleasure of the legislature. Cooley, Const. Lim. (4th ed.) 342; Cooley, Taxation, 146.

Companies were created by the legislature of the State, more than thirty years ago, for running street cars in the streets of the plaintiff city, whose charters made it necessary that the managers should obtain the consent of the city councils before they commenced to use and occupy the streets for that purpose. Ordinances were accordingly passed by the city authorities which required companies organized under such statutes to pay for the use of the city a license fee of thirty dollars for each car intended to be run. Subsequent charters of the kind were granted by the legislature which did not contain any provision requiring the companies or their agents to procure the consent of the authorities of the city before they could use the public streets for the running of their passenger cars. These companies denied the validity of the license charge, which gave rise to litigation and to new legislation, by which authority was given to the city councils to provide by ordinance for the pro-

per regulation of omnibuses or vehicles in the nature thereof, and to that end it was enacted that they might from time to time pass ordinances to provide for the issuing of licenses to as many persons as may apply to keep and use omnibuses or vehicles in the nature thereof, and to charge a reasonable annual or other sum therefor, and to provide for the punishment of the owners and drivers of the same for any violation of the provisions of the ordinances to be created by virtue of the authority conferred. Sess. Laws Penn. (1850) 469.

Authority was by that act expressly vested in the city authorities to pass ordinances upon the subject therein described, and to charge a reasonable annual license fee for the license or other sum for the same. Pending the period during which that enactment continued to be in operation the legislature of the State passed the act incorporating the defendant company, with the powers, privileges, duties, and obligations expressed in the act of incorporation. Id. (1864) 300.

Corporate privileges of the usual character are by the charter granted to the company, and the tenth section provides that whenever their dividends shall exceed six per cent per annum on the par value of the capital stock, the company shall pay for the use of the city a tax of six per cent on such excess over six per cent on the par value, and that they shall also pay " such license fee for each car run by the company as is now paid by other passenger railway companies."

Railway companies running cars on the streets of the city were required to pay at the time the defendant company was incorporated, for each and every car intended to be run, the annual license fee of thirty dollars, as appears by the ordinance then in force and fully set forth in the agreed statement of facts. Annual payments to that amount, it seems, were made by the defendant company, which may be inferred from the fact that the plaintiff city makes no claim for any deficit during that period.

Coming to the matter in controversy, it appears that the legislature, on the 11th of April, 1868, passed the act which is the principal subject of controversy. Sect. 1 provides that the passenger railway corporations of the city shall pay annually to the city in the month of January, the sum of fifty dollars, as

required by their charters, for each car intended to run over their roads during the year, and that they shall not be obliged to pay any larger sum ; and the same section provides that the city shall have no power to regulate such companies unless so authorized by the laws of the State.   Sess. Laws Penn. (1868) 849.

Regular payments, as required, were made by the defendant company until the year 1875, when they refused to pay any greater sum than thirty dollars per year for each car run. Payment of the excess beyond thirty dollars being refused, the authorities of the city instituted the present suit in the common pleas to recover the balance as claimed.   Service was made, and the parties having appeared, filed the agreed statement of facts exhibited in the transcript.   Hearing was had, and the court of original jurisdiction rendered judgment in favor of the plaintiff city for the sum of $4,218.60.   Dissatisfied with the judgment, the defendant company removed the cause into the Supreme Court of the State, where the judgment was affirmed.   Still not satisfied, the defendant company removed the cause into this court, and assigns for error the following causes: 1. That the act of the legislature defining the duties and liabilities of railway companies is in conflict with that provision of the Constitution which prohibits a State from passing any law impairing the obligation of contracts.   2. That the judgment of the court below is in conflict with that provision of the Constitution.

Attempt was made about the time the defendant company was incorporated to support the theory that a street passenger car was not a vehicle in the nature of an omnibus, and that the street passenger cars were not taxable in any form under the legislative act which authorized the city authorities to issue licenses to persons to keep and use omnibuses or vehicles in the nature thereof, upon the ground that the street passenger car was not a vehicle in the nature of an omnibus.   Controversy arose, and the Supreme Court of the State effectually disposed of the question in favor of the city.

Questions of importance were decided by the court in that case, most or all of which are more or less applicable to the case before the court.   They are as follows: 1. That a grant to a corporation to carry passengers in cars over the streets of

a city does not necessarily involve exemption from liability to municipal regulations, the right granted being neither greater nor less than that possessed by a natural person.   2. That when a corporation is authorized to pursue a specified business within a municipality it is intended that the business shall be conducted under the rules, restrictions, and regulations which govern others transacting the same business.   3. That the right to construct cars and own a railway neither enlarges nor diminishes the right to run cars and carry passengers, and that a reasonable charge for the use of the privilege to transact such a business is not a denial of the right.   4. That an ordinance requiring passenger cars to be numbered and pay a stipulated sum when licensed is a valid police regulation, and that such an ordinance might be passed under the act which authorized the city authorities to pass ordinances for the licensing of omnibuses and other vehicles of conveyance of a like nature.

Since that decision it is not doubted that the subject of imposing license fees, in cases like the present, is within the jurisdiction of the city authorities, if the statute under which they have exercised such jurisdiction is a valid act passed in pursuance of the Constitution.

When the company was incorporated the charter, as before remarked, contained the provision providing for the payment of a six per cent tax on the excess of dividends over six per cent on the par value of the stock, and the further provision that the company shall also pay such license for each car run as is now paid by other passenger railway companies in the city.   What the defendants contend is that the closing enactment of the section amounts to a contract that the railway company shall never be required to pay any greater license-fee than was then required of such companies running passenger cars on the streets of the city.   Other railway companies at that time paid an annual license of thirty dollars, and the defendants insist that the act of the legislature increasing the license to fifty dollars per annum is unconstitutional and void.

Two answers are made to that proposition by the plaintiff city, either of which is sufficient to show that the judgment must be affirmed:  1. That the language of the act of incorpo-

ration referred to does not amount to a contract of any kind, and certainly not to such a contract as that attempted to be set up by the defendants. 2. That even if the language employed in the charter is sufficient to amount to a contract that the license charge should not exceed the amount paid at that date by other such companies, still it cannot benefit the defendants for the reason that the Constitution of the State in force when the act of incorporation was passed provides that the legislature shall have the power to alter, revoke, or annul any charter of incorporation hereafter conferred by or under any special or general law, whenever in their opinion it may be injurious to the citizens, subject only to the condition that the alteration, revocation, or annulment shall be made in such manner " that no injustice shall be done to the corporators." Art. 1, sect. 26 ; Purdon, Dig. (9th ed.), p. 17.

Exemptions of the kind set up are to be strictly construed, but it is unnecessary to invoke that canon of construction to any considerable extent, as the language employed is not sufficient to take the case out of the rule that the alleged exemption will not be sustained unless it be expressed in clear and unambiguous terms. Taken in their widest sense, the words employed are no more than sufficient to warrant the construction that the legislature intended that the corporation should not then be required to pay any greater charge as license than other companies were required to pay for the same privilege, and it may perhaps be regarded as a guaranty against invidious exemptions adverse to the corporators in future legislation upon the subject, but it is plain that there is nothing in the language of the section to warrant the court in holding that the legislature intended to contract that the license charged for such passenger-cars should never exceed the annual sum of thirty dollars.

Railway companies of the kind, it appears, were first required to pay an annual sum of fifty dollars for each car run the year previous to the passage of the act which is the subject of controversy in the present litigation. Neither party refers to that act as of any importance in this case, except as a part of the State legislation upon the subject. Then comes the act in controversy, to which reference has already been made. 9 Sess. Laws Penn. (1868) 848.

When the street railway system of the city was comparatively in its infancy the city authorities, under the legislative act empowering them as such authorities to charge reasonable fees for granting licenses to such companies, fixed the sum at thirty dollars per annum for each car run. Regulations of the kind were in force and operation when the charter of the defendant company was granted. Other companies previously incorporated were at the time paying only that sum per annum for each car, and the tenth section of the charter granted to the defendant company provided that the then new company should pay the same as was paid by the other passenger railway companies.

Beyond doubt they were required to pay the same amount as was paid by the other companies, and it is perhaps a reasonable construction that without further legislation they could not be required to pay any greater sum, but the language of the section does not in terms contain any such prohibition. None of the other companies have any such immunity from increased taxation, and if construed to have that effect in favor of the defendant company it would have an extremely invidious operation at the expense of all other similar companies. Invidious exemptions are not favored, nor ought they to be, as they are in principle utterly opposed to the rule of equality, which ought always to prevail in imposing public burdens.

Taxation is an act of sovereignty to be performed, so far as it conveniently can be, with justice and equality to all. *Crawford* v. *Burrell Township*, 53 Pa. St. 219; Cooley, Taxation, 152. Common burdens should be sustained by common contributions, regulated by fixed rules, and be apportioned, as far as possible, in the ratio of justice and equity. *Sutton* v. *Louisville*, 5 Dana (Ky.), 28, 31.

Viewed in the light of these suggestions it is clear that the State never made such a contract with the defendant company as that supposed in the assignment of errors.

It seems that the Supreme Court of the State, when it became their duty at an earlier period to examine the question, came to the conclusion that the power to impose the license or tax might be supported as a police power derived under the act passed for the regulation of omnibuses or vehicles in the nature

of the same, it appearing that at that time no legislative act had conferred the express power to tax the cars of the company. *The Frankford, &c. Railway Co. v. City of Philadelphia,* 58 Pa. St. 119–124.

Since that the act in question in this case has been enacted, which itself requires all such companies without discrimination to pay the annual license or tax of fifty dollars for each car intended to be run over the city roads during the year.

Stress it appears was laid in the court below upon the words of the act, " as required by their charters," as if the obligation did not arise unless it was created by the terms of the charter, but the Supreme Court showed conclusively that the act of the legislature, when properly construed, did not sustain the proposition, and it appears to have been abandoned. Charters of the kind, as the Supreme Court showed in the opinion given in this case, required obedience to the lawful ordinances of the city under the exercise of its municipal powers, which, as the Supreme Court there say, is plainly evidenced by the remainder of the section imposing the tax of fifty dollars, by which the legislature took away from the city all power by ordinance or otherwise to regulate passenger railways, " unless authorized by the express terms of a law referring directly to such corporations."

Voluntary payments of the amount imposed by the new act were made by the company for sixty or seventy cars, from which the Supreme Court of the State held that it followed as a legal conclusion that the company had accepted the act.

All power to regulate such companies by ordinance or otherwise was taken away from the city during that period, and the Court held that inasmuch as the company had enjoyed the benefit of that prohibition ever since it was enacted, it must be understood that they have accepted the act. Some weight is doubtless to be given to that argument, but it is clear that the right of the State to impose such a tax, rate, or imposition in the future cannot be taken away by mere implication arising from a direction to pay a certain sum, the universal rule being that it requires some plainer negative of the power of the State to levy moneys for public purposes than is found in such a di-

rection.    Indications of such an intention might perhaps be found in other statutory provisions, sufficient, when added to such a direction and when taken together as a whole, to amount to a contract to relinquish the power; but when it is sought to prove such an exemption the statutory evidence of the same must be plain and unambiguous, and if not direct it must at least be such as is inconsistent with any other hypothesis, and conclusive that such was the intention of the legislature. Cooley, Const. Lim. (4th ed.) 341.

Much discussion of the second proposition, in view of the conclusive support given to the first, is quite unnecessary.    Power to alter, revoke, or annul any charter of incorporation was vested in the legislature by the Constitution more than a quarter of a century before the defendant company was incorporated.

Even when the language of the charter is sufficient to amount to a contract, it was twice admitted by Mr. Justice Story, in *Trustees of Dartmouth College* v. *Woodward*, that alterations and amendments may be made in the charter, where the power for that purpose is reserved to the legislature in the act of incorporation.    4 Wheat. 518, 708, 712.

Acts of incorporation granted subsequently to the adoption of the Constitution must be construed as if the provision of the instrument in question was embodied in the charter.    Private charters of the kind importing such an exemption are held to be contracts, because they are based for their consideration on the liabilities and duties which the corporators assume by accepting the terms therein specified ; and the general rule is that the grant of the franchise on that account can no more be resumed by the legislature, or its benefits be diminished or impaired without the assent of the corporators, than any other grant of property or legal estate, unless the right to do so is reserved in the act of incorporation, or by some immemorial usage or general law of the State in operation at the time the charter was granted.    *Holyoke Company* v. *Lyman*, 15 Wall. 500, 511.

Charters of private corporations duly accepted, it must be admitted, are in general executed contracts, but the different provisions, unless they are clear, unambiguous, and free of

doubt, are subject to construction, and their true intent and meaning must be ascertained by the same rules of interpretation as apply to other legislative grants, the universal rule being that whenever the privileges granted to such a corporation come under revision in the courts, the grant is to be strictly construed against the corporation and in favor of the public, and that nothing passes to the corporation but what is granted in clear and explicit terms. *Rice* v. *Railroad Company*, 1 Black, 358; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420.

Whatever is not unequivocally granted in such charters is taken to have been withheld, as all such charters and acts extending the privileges of corporate bodies are to be taken most strongly against the corporators. Sedgwick, Stats. (2d ed.) 292; *Lees* v. *The Manchester & Ashton Canal Co.*, 11 East, 644.

Vested rights, it is conceded, cannot be impaired under such a reserved power, but it is clear that the power may be exercised and to almost any extent, to carry into effect the original purposes of the grant and to protect the rights of the public and of the corporators, or to promote the due administration of the affairs of the corporation. *Pennsylvania College Cases*, 13 Wall. 190, 218.

Tested by these considerations, it is clear, even if it be admitted that the language of the charter is sufficient to import a contract, that the power of the legislature under the Constitution is amply sufficient to justify that department of the State to pass the act raising the license for each car from thirty to fifty dollars.

*Judgment affirmed.*