THE STATE EX REL. THE CREAM CITY RAILWAY COMPANY, Appellant, vs. HILBERT, Treasurer, etc., Respondent.

*September 1 — September 18, 1888.*

*Constitutional law: Corporations: Revocation of franchises: Municipal corporations: Street railways: License fees: Power to alter.*

1. The fact that one legislature has conferred upon a city or county the power to grant to an existing corporate body a franchise, or to create a corporation with certain franchises and powers, does not deprive a subsequent legislature of its power, under sec. 1, art. XI, Const., to take away the power so granted to the city or county, or to alter or repeal the acts done under such delegated authority.

2. Under sec. 1862, R. S. (if not under sec. 3, ch. 313, Laws of 1860, which is superseded thereby), the common council of a city may from time to time change the license fee to be paid by a street railway company, even though the amount of such fee was originally fixed by an ordinance, passed under the authority of the act of 1860, granting the franchise to such company.

3. Where it is alleged that an act of the legislature or of a municipality granting a franchise to a corporation creates an irrevocable contract, such act will be strictly construed in favor of the state or the municipality.

4. *It seems*, that a municipal ordinance granting a franchise to a street railway company, and providing that before any car shall be used on said railway the company shall pay to the city a license fee of a certain amount per annum for each car, does not prohibit the municipal authorities from afterwards increasing or diminishing the amount of such license fee.

APPEAL from the Superior Court of *Milwaukee* County.
The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

The appellant sued out an alternative writ of *mandamus* from the superior court of Milwaukee county, directed to the respondent, commanding him to accept the sum of $870, and execute a receipt for a license for eighty-seven cars of the relator to be run by said railroad company for the current year upon its railroad in said city. On the return of said writ the respondent moved to quash it on the ground that the facts stated in the petition and writ do not justify the court in issuing the same. The motion to quash the writ was granted, and from the order granting such motion the relator appeals to this court. The petition for the writ sets up the following facts:

(1) That the petitioner is a corporation incorporated under the general laws of this state, and is engaged in the operation of a street railway in the city of Milwaukee, and has been since December, 1874; that in 1874, being then such corporation, and being desirous to construct and operate a street railway in the public streets of the city of Milwaukee, *it applied to the said city for a franchise to construct, operate, and maintain a street railway in said city;* and thereupon the city of Milwaukee, in pursuance of ch. 313, Laws of 1860, passed an ordinance, December 28, 1874, which was duly approved by the mayor in January, 1875, wherein and whereby said city granted to the corporators (naming them), their successors and assigns, the exclusive right, permission, and authority to lay a single or double-track railway in certain streets in said city in said ordinance specified. Sec. 7 of said ordinance is in the words following: "The rate of fare for any distance shall not exceed five cents, except when cars or carriages shall be chartered for specific purposes; but before any car or carriage shall be used or operated on said railway, said grantees, their successors or assigns, shall pay to the said city a license fee of $10 per annum for each car or carriage; said license fee to be paid and a license for such car or carriage to be obtained

in the same manner as regulated by ordinance respecting hacks in said city; and any officer, conductor, driver, or agent of said grantees, their successors or assigns, who shall operate or cause to be driven or operated upon said line or railway any car or carriage unless the same shall have first been duly licensed, as herein provided, shall be punished by fine, not less than $10 nor more than $50."

(2) The petition alleges that the corporation accepted the said ordinance, and constructed its road in accordance with the provisions thereof, and has operated the same and paid the license fee prescribed by said ordinance down to and including the year 1887. It also alleges that the property of said corporation is regularly assessed and taxed by said city, and that the company have regularly paid all taxes assessed thereon.

(3) That in the year 1888 the city of Milwaukee passed a new ordinance, by the terms of which it was provided, among other things, that no company should operate, run, or cause to be operated or run, upon any street railway in the city of Milwaukee, any car without paying a license for each such car or vehicle; that such license should be granted by the mayor, signed by the city clerk, and sealed with the corporate seal of the city; and that no license should be issued until the party applying for the same should present to the city clerk the treasurer's receipt for the payment of the annual license fee; that the license fee for licenses for each car or other vehicle so operated by any such company should be $15.

(4) It is alleged substantially that the petitioner desired to operate on its lines of railroad in said city, in the year 1888, eighty-seven cars (giving their numbers); that the mayor executed to the petitioner a proper permit for a license for such cars; that it presented such permit to the respondent, the treasurer of the city, and tendered to said treasurer the sum of $10 per car, in all $870, in accordance

with sec. 7 of the ordinance of December 28, 1874, and requested the city treasurer to deliver him his receipt for the payment to the city of the annual license fee for each of said cars, and that the treasurer refused to deliver such receipt on the sole ground that the city, by its ordinance approved February 16, 1888 (sec. 400), provided that a license fee for licenses for each car operated by any street railway in said city should be $15 per car, and the city treasurer still refuses to give the receipt demanded.

There is a further allegation that the relator is now and always has been ready and willing to pay the license fee prescribed by said sec. 7 of the ordinance of December 28, 1874. The prayer of the petition is that the treasurer be commanded to receive the said $870 tendered by the company, and to execute and deliver to the relator a receipt in due form, to be delivered to said city clerk by the petitioner, so that it may receive licenses for its cars as aforesaid.

*E. Mariner*, attorney, and *E. P. Smith*, of counsel, for the appellant, contended, *inter alia*, that the ordinance of 1874 created a contract relation between the city and the railway company which is binding upon and inviolable by either party without the assent of the other. It is not a contract for a corporate franchise, for the relator was a corporation with all the powers it now has before this ordinance was passed. It is a contract granting the right of way to incumber the public streets of the city with its railway, a property right. *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *Mayor v. S. A. R. Co.* 32 N. Y. 261; 33 id. 42; *Des Moines v. C., R. I. & P. R. Co.* 41 Iowa, 569. The ordinance does not on its face reserve any right to change the rate of license fee, and it must be strictly construed. Where an ordinance of a city grants the right to operate a road without reserving any license, a subsequent ordinance imposing a license is void. *Mayor v. S. A. R. Co.* 32 N. Y. 261. And an ordinance increasing the rate of license

imposed by the ordinance granting the franchise is void. *Mayor v. T. A. R. Co.* 33 N. Y. 42. See, also, *Mayor v. T. & L. R. Co.* 49 N. Y. 657; *State v. Herod,* 29 Iowa, 123–6; *Des Moines v. C., R. I. & P. R. Co.* 41 id. 569; *State v. Hoboken,* 30 N. J. Law, 225; *Holt v. Commissioners,* 31 How. Pr. 334; *New Orleans v. G. S. T. & T. Co.* 26 Cent. L. J. (La.), 233. This increase of the license fee is not in any sense an ordinance of government or an exercise of the police power. It is as purely a financial exaction for the purpose of increasing the revenue of the city, and for that purpose only, as is the ordinary *ad valorem* tax which the city imposes and the company pays. It is as such without warrant of law. *St. Paul v. Traeger,* 25 Minn. 248; *Mayor v. S. A. R. Co.* 32 N. Y. 261; Tiedeman on Limitations of Police Power, 279 *et seq.* The power and right of the city to grant this franchise to the relator was a special grant of the legislature; the general ordinance power of the common council contained in the charter does not apply to the relator, so as to in any way restrict the right and privileges granted by the act of 1860. *Brooklyn C. R. Co. v. Brooklyn C. R. Co.* 32 Barb. 358; *Brooklyn C. R. Co. v. Furey,* 4 Abb. Pr. (N. S.), 364; *Brooklyn C. R. Co. v. Brooklyn,* 37 Hun, 413 418. The rule that the contract, being a grant by a sovereign power, should be construed strictly in favor of that power, and all ambiguities therein resolved in its favor, applies only when the grant is gratuitous. *Langdon v. Mayor,* 93 N. Y. 129; *Mayor v. B. & S. A. R. Co.* 97 id. 275. This grant, imposing as it does obligations on the relator as to the maintenance of its road and amount of the fare, and the payment of a fixed sum on each car before used upon its tracks, cannot be said to be without a consideration. *Hussey v. Field,* 1 Gale, 165; *Letton v. Godden,* 14 Law T. R. 298; *Mayor v. Starin,* 106 N. Y. 1.

*Eugene S. Elliott,* City Attorney, for the respondent.

The State ex rel. The Cream City R. Co. vs. Hilbert, Treasurer, etc.

TAYLOR, J.   The only question in this case is whether the railway company is entitled to a license to run its cars in said city on its railway tracks. on paying the license fee of $10 per car as prescribed by sec. 7 of the ordinance of December 28, 1874, or whether it must pay the license fee prescribed by the ordinance of February 16, 1888.   And this question depends upon the other question, whether the ordinance of December 28, 1874, fixing an annual license fee of $10, amounts to an irrevocable contract with the corporation that no other or greater license fee shall be demanded of said railway corporation during the life of such corporation, or rather during the time fixed by sec. 1 of said ordinance of December 28, 1874, giving the use of the streets to said corporation; which time is limited to fifty years from July 1, 1874.

The allegation of the petitioner in the petition as to its corporate existence is very general, and in no part of the petition are its powers stated except such as were granted to it by the city of Milwaukee, as is alleged, under the power and authority granted to said city by ch. 313, Laws of 1860.   The allegations as to its being a corporation, and as to its powers as a corporation, are all set up in the first paragraph of the foregoing statement of facts.   It will be seen by this statement of facts made in the petition that this corporation had no power to construct the particular railway it did construct in said city of Milwaukee, except under the power granted to it by the ordinance of December 28, 1874, and that the city obtained the power to make such grant to the corporation by virtue of ch. 313, Laws of 1860.   According to the allegations of the petition the power of the relator to build and operate a street railway in the streets of the city of Milwaukee, and to run its cars thereon for the carriage of passengers, was a power indirectly derived from the state through the action of the city of Milwaukee, acting under the authority of ch. 313, Laws

of 1860. Upon this appeal the relator is bound by the facts stated in its petition, and the petition expressly alleges " that in 1874 it applied to said city for a franchise to construct, operate, and maintain a street railway in said city, and thereupon the city of Milwaukee, in pursuance of the statute (ch. 313, Laws of 1860), passed an ordinance," etc.; referring to said ordinance, and especially to the seventh section of such ordinance fixing a license fee for running its cars upon said road.

It hardly admits of question that the powers granted by the city under the ordinance of December 28, 1874, to build and maintain, in the streets of said city, railroad tracks, and operate and run cars thereon for the carriage of passengers, was a *franchise* granted to the corporation known as the *Cream City Railway Company.* The fact that the franchise is granted by the state through the action of the city of Milwaukee cannot change the nature of the thing granted.

The fact that the legislature may confer upon a city or county the power to grant to an existing corporate body a franchise, or to create a corporation with certain franchises and powers, does not take away the constitutional power of the legislature to take away the powers so granted to the city or county, or to alter or repeal the acts of the city or county done under such delegated authority. If such power of repeal and revocation did not remain in the legislature, then the protection which was intended to be secured to the state by sec. 1, art. XI, of the constitution, which provides that all general or special acts enacted under the provisions of that section may be altered and repealed by the legislature, could be avoided and rendered nugatory. The laws referred to in the paragraph quoted are general or special acts creating corporations.

We do not understand that the learned counsel for the appellant seriously questions the power of the legislature,

under the section of the constitution above quoted, to alter, amend, or repeal the ordinance of the city in respect to this railroad, but it is claimed that until the legislature has interfered directly the city itself cannot change the ordinance of December 28, 1874, except so far as ch. 313, Laws of 1860, authorizes the city to change such ordinance; and it is further insisted that ch. 313 does not give the city any power to change that part of its ordinance which fixes the annual license fee for running the cars of the company. This contention is based upon the language of sec. 3 of said ch. 313, Laws of 1860, which reads as follows: " Any street railroad which may be constructed pursuant to any authority which may be granted according to the provisions of this act, shall be constructed upon the most approved plan for the construction of city railroads, and shall be run as often as the convenience of passengers shall require, and shall be subject to such reasonable rules and regulations in respect thereto as the common council of the city in which such railroad shall be constructed may from time to time by ordinance prescribe, and to the payment of such license fee to the city in which such road may be constructed, for each and every car run thereon, as may be prescribed by the common council of such city."

It will be seen that the common council of the city are authorized to make such rules and regulations in respect thereto as it may from time to time by ordinance prescribe; and the common council may also subject the corporation "to the payment of such license fee to the city, for each and every car run thereon, as may be prescribed by the common council of said city." It is urged that because this latter clause of the section does not read, " as may be prescribed from time to time by the common council," the power of the council to prescribe a license fee, when once exercised, is exhausted, and they have no power to prescribe a different fee,— in any event, not until the legislature shall

by some further enactment authorize such change by said council.

Admitting that the council could not, under ch. 313, Laws of 1860, prescribe a greater license fee than is prescribed by the ordinance of 1874, unless authorized to do so by the legislature, still we are of the opinion that the legislature has by sec. 1862, R. S., authorized such change. Ch. 313, Laws of 1860, was repealed by sec. 4978, R. S., and sec. 1862 of said revision was substituted in lieu of said ch. 313, Laws of 1860. Sec. 1862, among other things, provides that any municipal corporation may grant to any such corporation, *under whatever law formed*, such use, etc., and that "every such road shall be constructed upon the most approved plan for such roads, and shall be subject to such reasonable rules and regulations *and the payment of such license fees as the proper municipal authorities may from time to time prescribe.*" It seems to us very clear that all the provisions of this act apply to every street-railroad corporation whether organized before or after the enactment of the Revised Statutes of 1878, and consequently apply to the *Cream City Railway Company*, and that since the enactment of said sec. 1862, R. S., if not before, the proper municipal authorities of the city of Milwaukee may from time to time change the license fee demanded from said company, so long at least as the fee demanded is not clearly shown to be an unreasonable one. Whether, under the authority given, the city authorities would have the power to demand a license fee of so large an amount as to make it impossible for the company to pay and still operate their road profitably, is a question not involved in this case. The increase in the fee demanded in this case does not appear to be unreasonable in amount, and cannot, in itself, be any material hinderance to the operation of said road.

If it be conceded, as it seems to us it must be under the decisions of this court and of the supreme court of the United

States, as well as other state courts, that under sec. 1, art. XI, of our state constitution one legislature cannot create a corporation and give it powers or immunities which a subsequent legislature cannot alter or wholly take away, and that one legislature cannot deprive a subsequent legislature of the powers reserved to it by said sec. 1, art. XI, of the constitution, by delegating to a city or county the power to grant corporate rights to a corporation, then the legislature, in passing sec. 1862, R. S., exercised a lawful authority in giving to the cities in which street railroads were operated authority to change the license fees for running their cars on the roads in such cities, and consequently the change made by the city of ·Milwaukee was a lawful change. It cannot be contended, and we think it is not seriously contended by the learned counsel for the appellant, that if the powers granted to the railroad company by the city in 1874 had been granted in the same terms directly by the legislature, such grant would have created, as he now claims, an irrevocable contract. The provision of our constitution has taken away from the legislature the power of making such an irrevocable contract with a corporation. It seems to us this is the decision of this court in the cases of *West Wis. R. Co. v. Trempealeau Co.* 35 Wis. 257, 265; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425, 574 *et seq.;* and these decisions are sustained by the decisions of the supreme court of the United States. *Railway Co. v. Philadelphia,* 101 U. S. 528, 536, 83 Pa. St. 429, 434. In the case of *New Jersey v. Yard,* 95 U. S. 104, 111, Justice Miller, in speaking of the difference in the power of the legislature when there is no constitutional inhibition and when there is such constitutional inhibition, says: "The case differs from those in which, by the constitution of some of the states, this right to alter, amend, and repeal all laws creating corporate privileges becomes an inalienable legislative power. The power thus conferred cannot be

limited or bargained away by any act of the legislature, because the power itself is beyond the legislative control."

But if the city of Milwaukee, in granting corporate powers to the appellant, could bind itself and the state by a contract from which it could not relieve itself although authorized to do so by a subsequent act of the legislature, still we are of the opinion that under the well-established rules of law which must govern in the construction of an act of the legislature or the act of the municipal authorities of the city, the ordinance in question did not make an irrevocable contract. The language which it is insisted creates the irrevocable contract between the railroad company and the city is as follows: " The rate of fare for any distance shall not exceed five cents, except when cars or carriages shall be chartered for specific purposes; *but, before any car or carriage shall be used or operated on said railway, said grantees, their successors or assigns, shall pay to the said city a license fee of $10 per annum for each car or carriage; said license fee to be paid and a license for such car or carriage to be obtained in the same manner as regulated by ordinance respecting hacks in said city.*"

It will be seen by an examination of this language that there are no negative words in the language used, and there is scarcely an implication in this language that the city will not or shall not change this license fee for the term of fifty years, without the consent of the company. All the authorities hold that in order to bind the state or law-making power in cases of this kind, by contract, the language used must be clearly unequivocal. In construing acts of this kind the supreme court of the United States has said: " The surrender, when claimed, must be done by clear, unambiguous language which will admit of no reasonable construction conflicting with the reservation of that power. If a doubt arises as to the intent of the legislature, that doubt must be solved in favor of the state." *Delaware Railroad Tax*, 18

Wall. 206, 226. In *Comm. v. Easton Bank*, 10 Pa. St. 451, in which it was claimed that, because the charter as originally granted prescribed the payment of taxes on its dividends, no higher tax could afterwards be demanded by the state, the court say that " the original act was nothing more than a simple declaration of the tax *then* to be paid by the bank, and did not give the slightest intimation of an agreement or understanding that the tax should not be increased during the existence of the charter." This language of the Pennsylvania court is cited approvingly by the supreme court of the United States in the *Delaware Tax Case*, above cited. The language above cited from the ordinance of the city of Milwaukee is substantially the same as in *Comm. v. Easton Bank, supra*. It is a simple declaration that they shall pay a license fee of $10 per annum before any cars shall be run on the road. See, also, *Railway Co. v. Philadelphia*, 101 U. S. 528, 536, 83 Pa. St. 429, 433. Very many cases might be cited showing the strictness of the rule in construing a legislative act when it is insisted that such act amounts to an irrepealable contract, in all cases where it is alleged that the act takes away the taxing power. If we were not satisfied that the rights of the corporation in this case must be subject to the right of the legislature to alter or repeal the same under our constitution, and that the legislature did, by the repeal of ch. 313, Laws of 1860, and the enactment of sec. 1862, authorize the city of Milwaukee to do just what it has done, we should be inclined to hold that, in the absence of any constitutional inhibition upon the legislature to bind itself in granting charters to corporations, the ordinance of 1874 was not an irrevocable contract made between the city and the corporation, but simply a contract to pay a license fee of $10 until the common council should see fit in its wisdom to increase or diminish the same.

*By the Court.*— The order of the superior court of Milwaukee county is affirmed.