### TERRITORY v. P. E. HARRIS & CO.

### SAME v. ALASKA CONSOL. CANNERIES CO.

First Division. Juneau. March 1, 1926.

Nos. 2431–A, 2453–A.

I. **Constitutional Law** ☞136—**Fish** ☞10(1)—**Licenses.**

The Legislature of Alaska fixed the license tax to be paid by canners of salmon by the act of 1921. Session Laws, pp. 97, 98. Under the Act of May 5, 1923 (Session Laws, pp. 269, 270), the rates were increased. The defendants refused to pay the increased rates on their pack for 1923, alleging that prior to the passage and approval of the act of 1923 they were engaged in the work of preparing their canneries, etc., for that year's work under the rates fixed by the act of 1921; that the act of 1921 con-

---

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

stituted a contract between the territory and the defendants, and they were entitled under the act of 1921 to do business in 1923 under the rates fixed by the act of 1921; that the act of 1923, if enforced, would be retroactive legislation, and not binding on their 1923 business. On demurrer to these answers, *held*, that the license issued the defendant was not a contract, but a mere license to operate a cannery, and was in the nature of an occupational tax; that mere preparatory work, such as the making of cans, etc., does not give the defendant a vested right under the act of 1921; that the Legislature might, of its own will, increase the excise license tax of canneries at any time; that, on the date the amendment of 1923 became effective, the schedule therein adopted became a law, which was the basis of the tax subsequently to be calculated on all cases of salmon canned while that law was in effect; and that, unless the affirmative answer showed that the cases of salmon specified were packed before the adoption of the amendatory act of 1923, the tax must be calculated under the amendatory act; demurrer sustained.

**2. Statutes ⊜⇒230—Amendment by Subsequent Act.**

A statute which is amended is thereafter, and as to all acts subsequently done, to be construed as if the amendment was always there, and the amendment itself so thoroughly becomes a part of the original statute that it must be construed in view of the original statute, as it stands after the amendments are introduced and the matters superseded by the amendments eliminated.

The questions raised by the demurrer to the affirmative answers in these cases are the same, and, as they were argued together, I have considered that their determination in one case will settle, for the purposes of the demurrer, the other. The only question raised by the demurrer is whether the excise tax on the canning of salmon for the year 1923 should be calculated under the territorial license act of 1921 (pages 97, 98), or under the amendment of May 5, 1923, amendatory of the act of 1921 (pages 269, 270, S. L. 1923).

The affirmative answer avers that early in the year 1923 defendant, upon application therefor by it theretofore made, received a license under the tax laws of the territory, to prosecute the business of canning salmon. The affirmative answer sets forth the application for license and the license. The answer then alleges that pursuant to the license granted by the territory, the defendant, about April 1, 1923, commenced to prosecute its business by employing a crew of some forty persons in

⊜⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

making cans for the packing of salmon, making cases for the shipment of the finished product, driving fish traps and placing thereon webbing and.doing other work in connection with the necessary operation of its canneries; that the salmon to be packed were first caught in the last of May or first of June, 1923; that thenceforth fishing continued for approximately two months; that thereafter the operations were continued in preparing the product for market until some time after September 1, 1923; that between January 5, 1923, and up to May 5, 1923 (which is the date the amendatory act took effect), it expended in connection with its canning business in Hawk Inlet alone more than $15,000, and at False Pass a large sum of money; that it conducted its operations under the license ,granted for the year 1923 and packed an enumerated number of cases of different kinds of salmon during that year, by reason of which there became due the territory, as excise taxes for that year, $16,051.24, which sum was duly paid the treasurer as by law required.

The answer then refers to the claim of the territory that the additional taxes designated by chapter 101 of the Laws of 1923, were due and unpaid and in that connection, avers that the said chapter is not retroactive, and that the amount of the tax for the year 1923 is determined by the law of 1921. The answer then proceeds that the license issued by the territory to the defendant early in 1923 is a binding contract, consisting of a franchise to carry on the business of canning salmon, according to law, and that if the law were construed as retroactive, it would impair the obligations of the contract existing between the plaintiff and defendant, and in violation of the constitutional rights of defendant, in that prior to the passage of the amendment of 1923 and after the issuance of its license, it had expended upon the faith of such license, more than $15,000 in the Hawk Inlet cannery, and a larger sum in the False Pass cannery; that its right to the full enjoyment therefore became vested, and that it then and there had a vested right, not only therein, but in the profits naturally resulting therefrom, and further that to cease operations upon the passage of the act of 1923 would result in the loss of many thousands of dollars in value of labor expended and supplies bought, and would deprive the defendant of property without due 'process of law, in violation of its constitutional rights. The answer then attacks the constitutionality of

the classification of the salmon canneries as being an arbitrary and unreasonable classification and in violation of the equal protection clause of the Constitution of the United States.

John Rustgard, Atty. Gen., for the Territory.
Hellenthal & Hellenthal, of Juneau, for defendants.

REED, District Judge. The constitutionality of the classification of salmon and salmon canneries contained in the amendatory act of 1923 has been decided adversely to the contention of the defendant by the Supreme Court of the United States and the Circuit Court of Appeals for the Ninth Circuit in Pacific American Fisheries v. Territory of Alaska, and it need not be further mentioned; nor can it be seriously denied that the Legislature had authority to increase the excise tax or to declare an additional excise tax to that of 1921. See Patton v. Brady, 184 U. S. 608–619, 22 S. Ct. 493, 46 L. Ed. 713; Philadelphia Fire Association v. New York, 119 U. S. 111, 7 S. Ct. 108, 30 L. Ed. 342; Kelly v. Dwyer, 7 Lea (Tenn.) 180; Western Union Telegraph Co. v. Harris (Tenn. Ch. App.) 52 S. W. 748; Gaar, Scott & Co. v. Shannon, 52 Tex. Civ. App. 634, 115 S. W. 361; American Tobacco Company v. Danville, 125 Va. 12, 99 S. E. 733–736; State v. Hilbert, 72 Wis. 184, 39 N. W. 326.

It is understood, from the argument of counsel for the defendants, that the defendants do not question the authority of the Legislature to do so. The argument of the Attorney General is in effect that the Legislature, having the power to increase the excise or occupational tax described, when the amendment of 1923 was adopted by the Legislature, increasing the tax, that the increased tax automatically became the basis upon which the amount of tax due should be determined. The defendant's contention is that the license was in the nature of a contract between the territory and the defendant, and that the defendant had, in pursuance of the contract or franchise between it and the territory, before the amendatory act of 1923 was passed, expended large sums of money in preparing for the canning of fish, and that to base the amount of the tax for the year 1923 upon the amendatory act of 1923 would be giving the law a retroactive effect, and that it was not intended by the Legislature that such effect should be given to the law, and that as a matter of construction, all tax laws, unless clearly by their terms

7 A.R.—28

shown otherwise, are prospective in their application and should be so construed.

The argument of defendant's counsel is very persuasive, and there is no question in mind but that it is a general proposition of law that all tax laws should be construed as prospective, and not given a retroactive effect; but an examination of the statutes involved leads me to a different conclusion in this case from that of counsel for defendant in the application of those principles of law.

The license tax provided by the legislative act of 1921 is an occupational tax for revenue. This appears from the reading of the act itself. It provides for the payment of fixed sums for licenses for the conduct of certain businesses or occupations. On other occupations, the tax is based upon the amount of business done during the calendar year. The law further provides that before any one can pursue any of the occupations designated and taxed, he shall apply for and receive a license; that the fixed sum declared by the statute as the amount of the tax, shall be paid before the licensee is granted a license. When the amount of the tax is not fixed, but is to be determined by the amount of business done, an agreement to pay the tax on or before the 15th of January following must be indicated in the application for a license. The fact that the licensee is required to agree to pay the tax does not constitute a contract, but is a condition precedent imposed by law on any applicant for a license, where the license tax is not a fixed sum. Where it is a fixed sum, the tax is paid as a condition precedent to the issuance of the license. Where it is not a fixed sum, and is dependent upon the amount of business, the agreement to pay the tax is laid, according to law, as a condition precedent to the issuance of the license. Both are conditions precedent to the obtaining of the license, and constitute neither a contract nor a franchise with or to defendant.

The tax on salmon canneries under the act of 1921 was but a license or occupational tax based upon the output of the cannery in cases and graded upon the character of the fish canned, and the amount of the tax could not be determined until the pack was completed. When the defendant applied for its license to can salmon in 1923, the law of 1921 was in force; but the amount of the output of the cannery under the license could not be determined. At the time mentioned of its preparations for the canning season, the Legislature of the territory was in

session. Its officers knew, or should have known, that as a matter of law it was within the power of the Legislature to increase the license taxes or impose additional taxes on the output of salmon canneries or the other occupations mentioned in section 1 of the then existing law. In making the preparations for canning as alleged in the affirmative defense, the defendant did so at the risk of action by the Legislature. If there were no contract between the territory and the defendant, there would be no violation of the obligations of a contract as asserted in the answer, if the Legislature increased the amount of the license tax, and the increasing of the license tax would not violate the amendment to the Constitution of the United States.

The force of the amendment of 1923 (section 1) is a rather difficult question, and concerning which I have been in doubt, as to whether it was the intention of the Legislature that the license tax for 1923 should be calculated under the law of 1921 or 1923. I have considered this question, and am of the opinion that the intention of the Legislature was that the license tax for the year 1923 should be based upon the amendment of 1923, and not under the original law of 1921. Section 1 of the act of 1921, which the act of 1923 amends, designates business and appliances on which the excise tax is laid, and the amount thereof, while section 10 provides for a lien on property as security for the tax laid. The amendatory act of 1923 provides:

"That section 1 of chapter 31 of the Laws of 1921 is hereby amended so as to read as follows:

" 'Section 1. Any person, firm, or corporation prosecuting, or attempting to prosecute, any of the following lines of business, or who shall employ any of the following appliances, in the territory of Alaska, shall apply for and obtain a license and pay for said license, for the respective lines of business and appliances, as follows.' "

Then follows a schedule of some 21 enumerated classes of appliances and businesses which are subject to the license tax provided.

This section is identical with section 1 of the law of 1921, with the exception of some minor changes in the amount of the license tax imposed, and a great change as to the license tax imposed on fisheries. Under the fisheries schedule, important increases were made in the basic tax on each kind of salmon canned, as well as an additional classification, and a graduated tax based upon the amount of salmon of each kind packed in each cannery.

It is an axiom of statutory construction that, where a section of the statute is amended, the original section ceases to exist, and the section as amended becomes a part of the statute for all intents and purposes as if the amendments had always been there. In Blair v. Chicago, 201 U. S. 400–475, 26 S. Ct. 427, 446 (50 L. Ed. 801), Endlich on Statutes, § 294, is cited, as the correct rule, as follows:

"A statute which is amended is thereafter, and as to all acts subsequently done, to be construed as if the amendment had always been there, and the amendment itself so thoroughly becomes a part of the original statute that it must be construed, in view of the original statute, as it stands after the amendments are introduced and the maters superseded by the amendments eliminated."

Although the amendatory act of 1923 did not in express terms repeal the amended sections of 1921, yet by its terms the sections mentioned in the act of 1921 were superseded by the act of 1923. Section 14 of the act of 1921 provides that, when the tax is not a fixed sum, but is computed after the close of the year's business, it shall be computed on the basis of the business done during such calendar year, and all taxes for the current year shall be calculated on the basis adopted by this act. After the amendment was incorporated in the original act, it became, to all intents and purposes, a part of the original statute as to acts subsequently done. Therefore, under section 14, the basis for the calculation of the tax for 1923 was that designated in the amendatory act of 1923, because that act alone was in force at the time the tax became due.

As the statute stood at the time of the completion of the pack of salmon for the year 1923, the only schedule for a license tax for that year was that of the amendatory act of 1923, and under the act of 1921 as amended the taxes for the current year were to be calculated on the basis of the act then in force. If before the adoption of the amendment any cases of salmon had been packed, I am of the opinion that the tax on such cases would be calculable under the act of 1921; but, so far as the affirmative answer shows, none of the cases of salmon packed, mentioned in the complaint, were packed until after the amendatory act of 1923 was in force. As the tax did not become due until after the cases of salmon were packed, I am of the opinion that the tax should be based upon the law of 1923, and it does not seem to me that to base the

tax on the schedule under which the canning of the salmon was done would give the law a retroactive effect. The license is based upon the amount of salmon canned, and the law in force when the canning is done is the law under which the tax should be calculated. If the license were issued and no salmon were canned, and simply preparatory work was done for the canning of salmon, no tax would accrue to the territory. In other words, the tax accrues on each case of salmon when packed, and all cases of salmon packed after the amendment went into effect became subject to the tax prescribed by the amendment.

Therefore I can come to no other conclusion than the following: That the license issued the defendant was not a contract, but a mere license to operate a cannery, and was in the nature of an occupational tax; that mere preparatory work, such as the making of cans, etc., does not give the defendant a vested right under the act of 1921; that the Legislature might, of its own will, increase the excise license tax of canneries at any time; that on the date the amendment of 1923 became effective the schedule therein adopted became a law, which was the basis of the tax subsequently to be calculated on all cases of salmon canned while that law was in effect; and that, unless the affirmative answer showed that the cases of salmon specified were packed before the adoption of the amendatory act, the tax must be calculated under the amendatory act.

The demurrer is sustained.