GREEN v. OKLAHOMA TAX COMMISSION.

No. 29521. Sept. 17, 1940.

Rehearing Denied Nov. 19, 1940.

*107 P. 2d 180.*

S. J. Clendinning, of Tulsa, for plaintiff in error.

F. M. Dudley, A. L. Herr, and C. D. Stinchecum, all of Oklahoma City, for defendant in error.

DANNER, J. This is an appeal by a taxpayer from an order of the Oklahoma Tax Commission disallowing certain deductions from gross income of the taxpayer in computing his income tax for the years 1936 and 1937. The taxpayer contends that the commission should have allowed the deductions on the ground that they represented "debts ascertained to be worthless and charged off within the taxable year," within the meaning of section 9(f), art. 6, chap. 66, p. 292, Session Laws 1935, 68 Okla. St. Ann. § 880(f), which provides that in' computing the net income there shall be allowed, as deductions from gross income, debts ascertained to be worthless and charged off within the taxable year.

The debts arose by reason of certain advancements made by the taxpayer to two corporations, Superior Radio Company and Little Mexico, Inc. The evidence adduced at the hearing before the commission reflects that in 1935 and 1936 the taxpayer advanced to the Superior Radio Company various amounts aggregating $6,877.82. It appears that by December of 1936, he began to feel some doubt as to whether he would be able to collect the debt. Accordingly, on his income tax return for the year 1936, he deducted that amount as a worthless debt. However, and in spite of that fact, the record further shows that in 1937 he continued advancing the company further amounts, aggregating $1,605.18, which sum he likewise claimed as a deduction on his 1937 income tax return. Then, notwithstanding the foregoing, he again in 1938 advanced the additional sum of $1,208.85. In his testimony before the commission he stated that the reason why he continued making said advances, during the succeeding years, was that he thought that by so doing he might salvage something from the remaining assets of the Superior Radio Company.

Deductions from gross income are a matter of legislative grace, and the question of whether they are allowable or not allowable depends upon the statute. In re Levy, 185 Okla. 477, 94 P. 2d 537; Home-Stake Royalty Corp. v. Weems,

175 Okla. 340, 52 P. 2d 806; New Colonial Ice Co. v. Commissioner of Internal Revenue, 292 U. S. 435, 54 S. Ct. 788, 78 L. Ed. 1348; B. & O. Ry. Co. v. Commissioner of Internal Revenue, 78 F. 2d 460.

The entire controversy centers around and depends upon what is meant by the statute when it limits bad debt deductions to those "ascertained to be worthless and charged off within the taxable year." More particularly, it depends upon what is meant by "ascertained to be worthless," there being no issue raised as to the act of "charging off" the debt, and there being no question that the taxpayer claimed said deductions in the income tax returns for the years in which he claims they were ascertained to be worthless.

It is obvious that while some discretion is permitted the taxpayer in deciding whether the debt is a worthless one, still the mere statement by the taxpayer on his income tax return, or in a hearing, that he ascertained it to be worthless does not bind the Tax Commission. If the commission questions the correctness of the deduction, the taxpayer must show facts and circumstances from which it may reasonably be inferred that a reasonably prudent man, under the same circumstances, would consider the debt worthless; in other words, that reasonable grounds existed for so considering the debt. Avery v. Commissioner of Internal Revenue, 22 F. 2d 6; Powers Mfg. Co. v. Commissioner, 7 B. T. A. 786, and same case, 34 F. 2d 255; Higginbotham - Bailey - Logan Co. v. Commissioner, 8 B. T. A. 566.

It must be conceded that a reasonable latitude in the determination of disputed fact questions in hearings before the Tax Commission is necessarily allowed the commission itself. Else there would be no reason for the provision authorizing or requiring said hearings. 68 Okla. St. Ann. § 898. If the evidence is conflicting, or if there is room for doubt as to the credibility of evidence, especially when disputed by other evidence or circumstances, we should be guided by the commission's findings thereon.

The cases seem generally to hold that where a bad debt is claimed as a deduction by a taxpayer, and yet facts show that he continued in subsequent years to advance money to the same debtor, his subsequent advancements may be considered inconsistent with his claim that he had theretofore "ascertained" the debt to be "worthless." This is, as some courts have put it, on the principle that actions speak louder than words; that one will not ordinarily continue the throwing of good money after bad; that if the taxpayer had reasonable grounds for charging off the debt as a worthless one, he would not thereafter advance substantial sums to the same debtor, in succeeding years. While we do not endorse the foregoing pronouncement as a matter of absolute law in all cases, we do believe that such facts and circumstances are sufficient in a proper case, if unexplained, to serve as the basis of a disallowance of the deduction if the fact-finding body desires to use it for that purpose. There are no doubt instances where a creditor is using good business judgment in advancing more money to an already delinquent debtor, in the hope that said creditor will thereby be enabled to recoup a part of the older debt. It must be admitted, however, that such is an exception in the usual course of business, and that it is not ordinarily done without the presence of other influencing factors which are not evidenced in this case. At all events, it seems reasonable that the commission may take the fact of further advancements into consideration in determining whether in the prior year the taxpayer had in fact and on good grounds "ascertained" the debt to be "worthless." The question is not whether the debts were eventually ascertained to be worthless, but is whether they were ascertained to be worthless in the year covered by the return wherein they are claimed as deductions by the taxpayer. In the instant case, for illustration, the debtor corporation quit business in 1938, and canceled its charter, and the commission permitted said debts to be charged off as ascertained to be worthless during 1938, and as constituting proper deductions

for that year, but the taxpayer contends that he should have been permitted to deduct them for the years 1936 and 1937, during which years, and also during 1938, he continued to advance loans to the company, in the face of the fact that during preceding years he had charged off its debts to him as having been "ascertained" to be worthless.

We quote from Squier v. Commissioner of Internal Revenue, 68 F. 2d 25:

"The debts were never 'ascertained' by the testator to be worthless. He made advances only four or five days before his death, which showed that he still believed that the corporation had some vitality and thought he could salvage something from them. Upon no other theory can his continuance to advance money be explained. Inasmuch as he kept no books of account, we may ignore his failure to charge off the debts (Shiman v. Commissioner (C. C. A.) 60 F. 2d, 65 at page 66), but we cannot say that he 'ascertained' them to be worthless when almost the last acts of his life were to make advances to promote the continuance of their business. The right to claim a deduction is a statutory privilege, and the statute was not complied with. American Cigar Co. v. Commissioner (C. C. A.) 66 F. 2d 425; Ludlow Valve Mfg. Co. v. Durey (C. C. A.) 62 F. 2d 508."

In Powers Mfg. Co. v. Commissioner, 7 B. T. A. 786, and (same case) 34 F. 2d 255, the taxpayer had attempted to charge off bad debts, but thereafter, as here, he continued to make similar advances to the debtor. The deductions were disallowed, both by the Board of Tax Appeal and the Circuit Court of Appeals. The board in its opinion had the following to say:

"A requirement of the statute which the petitioner must meet in order to become entitled to the deduction here claimed is that the debt be 'ascertained to be worthless' in the taxable year. The debtor corporation was in existence during the taxable year as an operating company with substantial assets, and the petitioner continued to make similar advances.

"The board is of the opinion that the evidence is insufficient to satisfy the burden imposed upon the petitioner of showing the worthlessness of these debts as a condition precedent to securing the benefit of the deduction claimed, and, therefore, the action of the commissioner in denying the deduction must be sustained."

In affirming the decision of the board in that case, the Circuit Court of Appeals, in Powers Mfg. Co. v. Commissioner, 34 F. 2d 255, said:

"The second matter involved advancements made by the petitioner to the Iowa-Alabama Farms Company, a corporation, over a period of years. It appears that the advancements of each year were regularly charged off as worthless by petitioner at the end of the year in which the respective advancements were made. It appears, too, that the Iowa-Alabama Farms Company, at all the times the advancements were charged off as worthless, owned and still owns real estate, and that petitioner up to the time of the hearing before the board still continued to make advances to it. Under these circumstances, the board held, and we think with good reason, that petitioner's acts spoke louder than its words. * * * At least, this was the conclusion of the board, and we may not set aside its findings."

Now, concerning the claimed deductions for advances made to Little Mexico, Incorporated: The taxpayer was a patron of a Mexican restaurant operated by a woman whose note he indorsed in 1936 or 1937, to enable her to obtain money with which to buy out a competitor and to incorporate. This was upon his advice and suggestion. She incorporated under the above name. He paid the note and she issued him stock for having done so. He turned in the stock in 1937 and it was canceled. The commission allowed him as a deduction the amount so paid on the note, as represented by the stock.

But he contends that the commission should also have allowed him to deduct other sums advanced her or the corporation during that period of time, exclusive of the above item. It appears that the refusal to allow these items as deductions was based upon the taxpayer's failure to show ascertainment of worthless-

ness in the year for which they were claimed as deductions, 1937. It is not shown whether the taxpayer claimed the sum to be deductible for 1938, but as to 1937 we must hold that the contention cannot be approved. The taxpayer testified that he installed several things which were quite expensive and that it was "absolutely impossible to get her to do anything, including keeping books," and that "she would not keep books that you could tell anything about, so after so long a time, and in December, 1937, I told her I was through with the thing and that she could have her stock back for a nominal figure, and not to call on me any more for additional items of expense, so that terminated my connection with that outfit and after that I put it down as a loss." Exclusive of the stock transaction, for which the commission allowed a deduction, the substance of the foregoing is simply (a) that she would not keep books, (b) that he terminated his connection with Little Mexico, Incorporated, and (c) that he put it down as a loss. But that is not a showing that in 1937 reasonable grounds existed for considering the debt worthless, either in whole or in part. It is merely a showing that the woman was not as businesslike as she should have been, and that he ran out of patience and quit. As shown by the authorities hereinbefore and hereafter cited, the mere fact that he "put it down as a loss" is not sufficient, standing alone. It is possible, or even probable, that especially in view of the expensive installations of which he testified, added to the other assets of the business, he could have collected a part, if not all, of the indebtedness at that time if he had persisted.

In a hearing of this kind the burden is upon the taxpayer to show that the debt which he claims as a deduction was properly ascertained to be worthless during the year for which it is claimed. That is necessarily so, and it is right and proper that it should be so, for otherwise the commission would be bound by the mere statement of the taxpayer that he considered it worthless, regardless of the existence or nonexistence of reasonable grounds for so considering it. As we understand the law, the test is not whether the debt is actually worthless, and there is no such burden as that. The debt may be allowed as a proper deduction for the year in which it reasonably appears that it becomes worthless, even though in a subsequent year it be paid, when it becomes income for that year. But neither is the test the mere unfounded entry of the taxpayer that it is worthless. It all comes back to the rule that it is deductible if it was "ascertained" to be worthless and charged off within the taxable year, which means if reasonable grounds existed to so consider it, as distinguished from merely *labeling* it as worthless regardless of the facts, plus the charging of it off, within the taxable year. No argument is had herein concerning what is meant by "charged off." Although from the very nature of the proceeding it would seem obvious that the burden is upon the taxpayer to show the ascertainment of worthlessness where same is challenged, many authorities to that effect could be cited. See all of the cases, supra. Not as an authority which is necessarily binding upon this court but as containing reasoning which we think fair and correct on its face, we quote Higginbotham - Bailey - Logan Co. v. Commissioner, 8 B. T. A. 566:

"The burden then is upon the petitioner to establish that it did make certain during the taxable year that the debts claimed as deductions were without value. We take it for granted that when Congress authorizes this Board to decide the issues arising between a taxpayer and the commissioner in such a case as this, such taxpayer has not established the correctness of his contention by his bald statement that he believed it to be worthless, or that he ascertained it to be worthless or that, on undisclosed information, he came to the conclusion that it was worthless. To so hold would be to put the government in the hands of the taxpayer and substitute his judgment as to the conclusion to be drawn from the facts for that of the body created to decide the issue.

"Nor is it a question whether the taxpayer believed the debt to be worthless. To so hold would be to grant an undue

advantage to the pessimist or to the tax-payer who made no investigation. In our opinion, the burden upon the petitioner is to show what steps he took to collect the debt, what information came to his knowledge, and what other circumstances existed which led him to his conclusion. It then becomes the duty of the Board to determine whether the debt was in fact ascertained to be worthless within the meaning of the law."

An assignment of error not heretofore mentioned complains of the commission's refusal to allow a deduction of $1,513.55 for the year 1937 in maintaining a yacht, as "ordinary and necessary expenses paid during the taxable year, in carrying on any trade or business" within the meaning of the 1935 Act, supra. The commission did not hold that a yacht could not properly come within the quoted classification of deductible expenses, but apparently declined to allow the deduction because of a failure of proof that said expenditure was an "ordinary and necessary" expense in carrying on the taxpayer's trade or business. While the testimony in this connection was meager and partaking somewhat of the nature of conclusions, detailed discussion thereof is unnecessary because of the subject considered in the next paragraph.

This assignment of error was not argued at all in the original brief of plaintiff in error, and therefore the defendant in error in composition of the answer brief was entitled to treat it as waived. Railway Express Agency v. Stephens, 183 Okla. 615, 83 P. 2d 858; Polson v. Pirtle, 173 Okla. 594, 49 P. 2d 531. Evidently the defendant in error treated it as waived, for it was commented upon in the answer brief in only a casual or passing manner. The proposition was put forth for the first time in the reply brief after, of course, the answer brief had been filed.

It would be unfair and contrary to good practice to permit the plaintiff in error, after entirely waiving an assignment of error in his original brief, to present it successfully for the first time in his reply brief. In that manner a de-fendant in error would be afforded no opportunity to meet the argument, except by the unusual expedient of applying for permission to file a second or response brief to the reply brief, to his added expense and delay. It is well settled, and, we believe, commonly known, that the office of a reply brief is to meet counter arguments or new matter contained in the answer brief, and that it is not to serve as a vehicle for the advancement of new and original propositions unless same are pertinent to the argument in the answer brief. Therefore, this court will not ordinarily entertain such a proposition, asserted for the first time in the reply brief. We say "ordinarily" because, being a rule of appellate procedure, it is within the appellate court's discretion to determine, for itself, when public welfare or other considerations justify exceptions to its enforcement.

The evidence as reflected by the record, when measured impartially by the rules of law governing the case, is sufficient to sustain the order. Accordingly, the order is affirmed.

BAYLESS, C. J., and RILEY, CORN, and HURST, JJ., concur.