**DUNDEE CORPORATION, a corporation organized and existing under and by virtue of the laws of the State of Florida, v. J. M. LEE, individually and as Comptroller of the State of Florida.**

24 So. (2nd) 234　　　　　　　　　　　　　　　　June Term, 1945
December 18, 1945　　　　　　　　　　　　　　　　En Banc
Rehearing denied January 14, 1946

*Bussey, Mann & Barton* and *J. Lewis Hall,* for appellant.

*J. Tom Watson,* Attorney General, *George M. Powell,* Assistant Attorney General, for appellee.

TERRELL, J.:

Dundee Corporation filed its bill of complaint in the Circuit Court of Leon County seeking to restrain the Comptroller from enforcing the provisions of Chapter 201, Florida Statutes

of 1941 against it. A motion to dismiss the bill of complaint was granted and this appeal was prosecuted.

The question for determination is whether or not a ninety-nine year lease is such a conveyance of an interest in real estate as requires payment of the documentary stamp tax imposed by Chapter 201, Florida Statutes of 1941 and if it is on what basis should the tax be computed and paid.

The statute provides for a tax on promissory notes, non-negotiable notes, written obligations to pay money, deeds and other instruments conveying land or any interest therein. The amount of the tax is ten cents on each one hundred dollars of the consideration therefor, or the obligation evidenced thereby. Section 201.02 and 201.08, Florida Statutes 1941.

We think the phrase "written obligation to pay money" must comprehend the covenant in a lease to pay rent. The purpose of the act was to raise revenue and "written obligation to pay money" was intended as a dragnet to catch any kind of an instrument designed for that purpose. The universal administrative interpretation of "written obligation to pay money" has been to enlarge the classification immediately preceding it, rather than to apply the rule of ejusdem generis to it as contended by appellants. The environment in which the phrase is used supports this interpretation. Certainly a ninety-nine year lease must convey some kind of an "interest" in land.

Since we hold that "written obligation to pay money" contemplates the covenant in a lease to pay rent, we are next confronted with the real question in the case, viz., should the tax be computed on the rent promised to be paid for the life of the lease, or should it be computed on the present value of that amount or should it be based on the actual value of the real estate leased.

The bill of complaint alleges that the value of the lease hold is $200,000.00, it is shown that the amount agreed to be paid for the lease is $18,000.00 per year which would provide $1,782,000.00 for the period of the lease. The present value of this amount on the basis of eight per cent, the rate used in the absence of special contract therefor, (Section 687.01 Florida Statutes 1941) is $500,273.99.

If the tax is computed on the rent promised for the life of the lease it amounts to $1,782.00, if it is computed on the present value of the amount promised to be paid it amounts to $500.27, and if computed on the value of the real estate leased it amounts to $200.00. In our view the tax should be computed on the present value of the lease. A ninety-nine year lease is by its very nature highly speculative and contingent. No instrument is more sensitive to the whim and caprice of economic currents. Historically many of them are forfeited and many others are modified. A prudent investor would never bank on them. To contend that the amount paid over a period of ninety-nine years is the basis for computing the tax on such an instrument does not square with the theory on which taxes are imposed, it does not square with right and reason, neither does it square with the value and sale of such instruments in the open market. The "consideration" or "obligation" of an instrument spread over ninety-nine years, can under no theory be the amount paid at the end of the period.

The theory upon which any tax is imposed under our constitutional set-up is that it bear equally, or as near as can be on all classes. Taxes can be imposed only for the support of the legitimate expense of government and to promote the general welfare. In times of great disaster they may become burdensome, but they may not become confiscatory. "The power to tax is not the power to destroy while this court sits," said Mr. Justice HOLMES and "You can shear a sheep indefinitely, but you can skin it but once," said Chairman Doughton of the Ways and Means Committee when shaping the Federal Tax Bill. Equally as pertinent were the words of Colbert, the Minister of Louis XIV, "The science of taxation consists of getting the most feathers from the goose with the least amount of squawking."

There is wisdom enough in this philosophy to dissolve all the tax assessment problems that arise, if taxing officers would absorb it. It may be that future generations will devise a better scheme to impose a document tax on such intangibles as ninety-nine year leases, but with the light now before us in view of their attributes, manner of payment and the fact that

the act imposes the "consideration" or "obligation" evidenced thereby as the basis of computation, we think the present worth of the consideration promised over the period is the fair basis on which to impose the tax. This holding squares with the rule by which paper of this class is valued on the market.

It also squares with good trusteeship on the part of taxing officials and in matters not whether the taxing government is Federal, State or local, it must assume full responsibility for the wrongful acts of its officers and employees. It should never be forgotten by these officers and employees that the first essential of good government or good trusteeship is justice to the citizen. "The government always wins when the citizen gets justice, it always loses when he is wronged."

It follows that the judgment appealed from must be and is hereby reversed.

Reversed.

CHAPMAN, C. J., BROWN, BUFORD, THOMAS, ADAMS and SEBRING, JJ., concur.