ROLWING–MOXLEY CO., a
corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. S77–0067C.

United States District Court,
E. D. Missouri,
Southeastern Division.

May 18, 1978.

James E. Reeves, Ward & Reeves, Ca-
ruthersville, Mo., L. D. Joslyn, Joslyn, Jos-
lyn, Vaughan & Pruett, Charleston, Mo., for
plaintiff.

Robert D. Kingsland, U. S. Atty., St. Louis, Mo., James E. Crowe, Jr., Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

MEREDITH, Chief Judge.

This claim for income tax refund was tried to the Court on November 21, 1977. In accordance with Rule 52(c), F.R.C.P., 28 U.S.C., the Court makes the following findings of fact and conclusions of law.

In 1965 the plaintiff entered negotiations with Elot H. Raffety Farms, Inc., and L. D. Joslyn (an owner of one-third of plaintiff's stock), in order to consider the prospects of cotton farming in the Republic of Mexico. Later in that year, plaintiff, Joslyn, and Raffety Farms agreed orally to commence cotton farming operations in Mexico. They further agreed that Raffety Farms would own a one-half interest in the enterprise, and that Joslyn and the plaintiff would each own a one-fourth interest. The parties were to share profits and losses pro rata on the basis of their investments. Elot Raffety was to act as manager.

The three "partners" had a Mexican "association" organized to conduct the farming business. The name of the association was "El Sombrero Sociedad de Responsibilidad Limitada" (El Sombrero). El Sombrero did not issue stock.

In April 1966, the parties advanced $400,000 to El Sombrero: Raffety advanced $200,000, Joslyn $100,000 and plaintiff $100,000. Around June 1966, the parties advanced an additional $44,000, $11,000 of which was plaintiff's share. No notes evidencing debt were issued to Joslyn, or Raffety, although several notes were purportedly executed by plaintiff and Raffety, who was acting on behalf of El Sombrero.

Because of natural disasters, the Mexican farming venture lost money and eventually folded. The plaintiff later attempted to deduct its purported "loan" as a "bad debt" within the meaning of section 166(a) of the Internal Revenue Code, 26 U.S.C. § 166(a). The Internal Revenue Service (IRS) disallowed the deduction after an audit of the plaintiff's returns.

Plaintiff subsequently filed a claim for refund. The IRS denied plaintiff's claim. Accordingly, plaintiff brings this action for refund of federal income taxes under 28 U.S.C. § 1346(a), for the taxable years ending March 31, 1964, 1965, 1966, 1967, 1968, 1969, and 1970. Plaintiff asserts that its debt became worthless in 1967, therefore, providing it with a three-year carryback and five-year carryforward.

Plaintiff contends the amounts it advanced to El Sombrero were bona fide "debts" and deductible as operating losses under 26 U.S.C. § 165(a), or as bad debt losses under 26 U.S.C. § 166(a), or as ordinary business expenses under 26 U.S.C. § 162(a).

The Government's position is that plaintiff's interest was equitable in nature, and, as such, is a contribution to capital, thereby creating a capital loss under 26 U.S.C. § 165(f). As authority for its position, the Government contends the facts and law in this case are controlled by the recent decision of *Elot H. Raffety Farms, Inc. v. United States*, 511 F.2d 1234 (8th Cir. 1975), wherein the nature of Raffety's contribution to El Sombrero was litigated and held to be a capital loss, rather than an ordinary loss.

The parties have stipulated three basic issues for decision:

1. Whether the Court has jurisdiction for plaintiff's claim for refunds for the taxable years ending March 31, 1968, 1969, and 1970, years for which plaintiff has not filed a claim for refund, as required by section 7422(a) of the Internal Revenue Code of 1954, 26 U.S.C., as a pre-requisite to suit in the district court for refunds.

2. Whether plaintiff is barred by collateral estoppel from relitigating the issue of the tax character of advances to El Sombrero because of the findings made by the Eighth Circuit Court of Appeals in *Raffety*, supra.

3. Whether plaintiff's advances constituted debt or capital contributions.

■ The Court finds that the jurisdictional defect with respect to the taxable years ending March 31, 1968, 1969, and 1970 has been cured by the filing of claims for refunds under 26 U.S.C. § 7422(a) and by the filing of plaintiff's first amended complaint.

■ The Court also finds that *Raffety Farms* case has no collateral estoppel effects insofar as the direct characterization of plaintiff's investment in El Sombrero. It is conclusive, however, as to the basic facts underlying the El Sombrero venture.

Finally, the Court finds that plaintiff's contributions to El Sombrero were capital in nature for the following reasons:

■ As stated in *Raffety Farms,* supra, any income tax deduction is a matter of legislative grace and the claimant bears the burden of proving that it meets the necessary requirements. *Raffety,* supra, at page 1238; *Interstate Transit Lines v. Comm'r,* 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943); *Matter of Uneco, Inc.,* 532 F.2d 1204, 1207 (8th Cir. 1976).

■ The Court will, therefore, focus on the particular advances made to El Sombrero by plaintiff to determine whether such advances were debts or capital investments.

El Sombrero was created with the intended purpose of conducting cotton farming operations in the Republic of Mexico. The Court of Appeals found, and the parties in the case at bar have stipulated, that El Sombrero had more corporate characteristics than non-corporate characteristics, and as such, was an "association taxable as a corporation and that advances to that entity must be reviewed for tax purposes as

advances to a corporation." *Raffety,* supra, at page 1237; stipulation filed November 27, 1977, page 2.

Exhibits and testimony adduced at trial illustrate that the plaintiff made the following advances to El Sombrero by check:

| | |
|---|---|
| April 15, 1965 | $ 5,000.00 |
| June 28, 1965 | 25,000.00 |
| August 27, 1965 | 70,000.00 |
| July 5, 1967 | 11,000.00 |
| Total | $111,000.00 |

Section 166(a)(1) of the 1954 Internal Revenue Code provides that "[t]here shall be allowed as a deduction any debt . . ." Furthermore, Treasury Regulation 1.166–1(c) provides in part that:

"Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166."

In the case of *In re Indian Lake Estates, Inc.,* 448 F.2d 574, 578 (5th Cir. 1971), the Court stated that:

". . . the decision as to whether funds furnished to a business venture are debt or equity depends upon the economic substance of the transactions between the parties and not upon the form in which any part or parts of the monetary advances happen to be cast." citing *Gregory v. Helvering,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

Viewing the criteria set out in *Uneco* *, supra, the facts in this case illustrate El

---

* The Court therein identified ten indicia to be applied in determining whether a "loan" was truly debt or in fact equity:

"1. Whether the corporation was so grossly undercapitalized that the loans were in fact needed for capital purposes and were actually intended to be risked capital rather than a loan.

"2. Whether the purported loans were made in proportion to equity holdings.

"3. Whether the repayment of the loan was predicated on the success of the venture.

"4. Whether there was a fixed date for payment of the note and a reasonable expectation of payment by that date.

"5. Whether the note was subordinated to other corporate debts.

"6. Whether third parties would have made the loan under the same conditions.

"7. Whether the claimed loan was secured by a mortgage or otherwise.

"8. Whether a provision was made for a sinking fund to retire the loan.

Sombrero was under-capitalized, thus, the need to secure additional financing from Cook and Co. The testimony of Joslyn further shows that even if plaintiff had been fully repaid, its profit-sharing interest would have continued. That testimony also illustrates plaintiff had an equal voice in the management of El Sombrero.

Trial exhibits show that no fixed maturity date was listed on the notes, nor was there any provision for interest. There was no contemporaneous security provided as collateral for the "loans". Advances were made pro rata based on the parties' interests in El Sombrero. The plaintiff's advances were subrogated to the debt of El Sombrero to Cook Company (El Sombrero borrowed from Cook Company to finance its day-to-day operations). Payment of plaintiff's notes was predicated on the financial success of the venture. Plaintiff has never received payment for any part of the principal, nor has it received any interest on that amount.

Another strong factor in this Court's decision is that the corporate minutes of the May 15, 1965, meeting wherein the directors amended plaintiff's articles to legally allow it to enter farming operations in Mexico, reveal the following interesting language:

> "Moved: that F. D. Rolwing be authorized and instructed to advance an amount for Rolwing-Moxley Company's one-fourth interest in said venture as is necessary from time to time but not to exceed, at this time, $100,000.00 provided that a like amount be advanced by L. D. Joslyn and a sum equal to the total amount advanced by Rolwing-Moxley Company and L. D. Joslyn be advanced by Elott (sic) Raffety Farms, . . ."

This clearly reveals the plaintiff's subjective intent in the transaction in question. Plaintiff did not advance funds with a reasonable expectation of repayment regardless of the success of the venture, but instead invested a sum as capital in the Mexican association. See *Gilbert v. Commission-*

*er of Internal Revenue,* 248 F.2d 399, 406 (2nd Cir. 1957).

Accordingly, the Court will dismiss plaintiff's complaint with prejudice and enter judgment for the defendant on the grounds that plaintiff's advancement was a "start-up expense" and that plaintiff received a "pure equity interest" in El Sombrero proportionate to that contribution. *Raffety,* supra, at page 1239.

---

"9. Whether the person making the purported loan participated in the management of the corporation.

"10. Whether the corporation had a large proportion of debt to equity."
*Uneco,* at page 1208.