**INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant Below),**

v.

**FOOD MARKETING CORPORATION, a Division of Super Valu Stores, Inc., Appellee (Plaintiff Below).**

**No. 3–1076A230.**

Court of Appeals of Indiana, Third District.

April 28, 1980.

Rehearing Denied June 6, 1980.

Theo. L. Sendak, Atty. Gen., Kenneth R. Stamm, Deputy Atty. Gen., Indianapolis, for appellant.

Theodore D. Nering, II, Michael D. Shumate, Dutton, Kappes & Overman, Indianapolis, for appellee.

HOFFMAN, Judge.

Indiana Department of State Revenue (appellant) appeals from a judgment under the Indiana Gross Income Tax Act ordering a tax refund to Food Marketing Corporation, a wholesale grocer. As such, taxpayer is allowed to compute its tax under IC 1971, 6–2–1–1(s) (Burns Code Ed.) which provides:

"['Gross income,' defined—Wholesale grocers] In the case of wholesale grocers who are engaged in the business of selling stocks of groceries, tobacco products and expendable household supplies, gross income shall be deemed to mean the gross earnings, computed upon an annual basis, which are derived from wholesale sales of stocks of groceries, tobacco products and expendable household supplies to retail food establishments, and such wholesale grocers shall be subject to the rate of taxation as prescribed in section 3(g) [6–2–1–3(g)] of this chapter. For the purpose of this subsection only gross earnings shall be construed to mean the gross receipts derived from the sale at wholesale of stocks of groceries, tobacco products and expendable household supplies which are customarily sold through retail food establishments less the cost of the stock of groceries, tobacco products and expendable household supplies sold during such period, without any deductions of any other kind or character." (Emphasis added.)

The underscored phrase in this statute gave rise to the controversy at trial, with appellant's contention that "cost of the stock sold" entitled taxpayer to deduct only the expenses of initial acquisition and freight in expense. Taxpayer on the other hand comprehended the statute to entitle deductions for all expenses incurred to prepare products for sale to retail food establishments including warehousing costs, buying costs, turnover costs, and building expenses.

Taxpayer was initially advised by the Revenue Department that no costs were allowable in determining gross earnings under Section 1(s) of the Gross Income Tax Act on interstate sales. During a meeting of the financial officers from Indiana-based wholesale grocers held in February 1973 taxpayer was informed to the contrary, and subsequently filed for and received a refund of tax erroneously collected on its interstate sales. Because no action was taken as to a refund of tax paid for intrastate sales taxpayer initiated this suit. After trial was had the court found for taxpayer, and the following findings of fact and conclusions of law were entered on April 15, 1976:

## "FINDINGS OF FACT

"1. Plaintiff is located in Allen County, Indiana; defendant is the proper party defendant and subject to suit for refund of taxes; all things necessary to be done as a prerequisite to such suit have been done; and the Court has jurisdiction over the parties and the subject matter of this action.

"2. Plaintiff is a wholesale grocer engaged in the business of selling and did sell during the period December, 1968 through February 24, 1973 stocks of groceries, tobacco products and expendable household supplies

at wholesale to retail food establishments and is entitled to compute its gross income tax liability pursuant to Section 1(s) of the Gross Income Tax Act of 1933, as amended.

"3. Plaintiff is entitled to deduct its buying, warehousing, turnover and building expenses from its gross receipts for purposes of computing gross earnings under Section 1(s) of the Gross Income Tax Act of 1933, as amended.

"4. Defendant has admitted that, if plaintiff is entitled to deduct its buying, warehousing, turnover and building expenses from its gross receipts in computing its gross income tax then the total refund due to the Plaintiff is:

|      |         |              |
|------|---------|--------------|
|      | 1969    | $49,839.70   |
|      | 1970    | 55,447.86    |
|      | 1971    | 63,514.94    |
| YE   | 2/6/72  | 10,509.26    |
| YE   | 2/24/73 | 69,982.54    |
|      |         | $249,294.30  |

plus interest from the dates of overpayment to the date of payment of judgment and I find that such refund is due Plaintiff.

"5. The facts stated in Plaintiff's complaint are true.

"6. Plaintiff is entitled to a judgment against defendant in the principal amount of $49,839.70, together with interest at six per cent per annum from the date of overpayment to the date of payment of judgment; in the principal amount of $55,447.86, together with interest at six per cent per annum from the date of overpayment to the date of payment of judgment; in the principal amount of $63,514.94, together with interest at six per cent per annum from the date of overpayment to the date of payment of judgment; in the principal amount of $10,509.26, together with interest at six per cent per annum from the date of .overpayment to the date of payment of judgment; and in the principal

amount of $69,982.54, together with interest at six per cent per annum from the date of overpayment to the date of payment of judgment for a total principal amount of $249,294.30, plus interest as stated.

"CONCLUSIONS OF LAW

"1. The law is with the Plaintiff and against the defendant.

"2. The Gross Income Tax levied and collected by the State of Indiana pursuant to the provisions of Section 1(s) of the Gross Income Tax Act of 1933 as amended (on those certain sales which have been segregated and are the subject matter of this action) should have allowed Plaintiff's buying, warehousing, turnover and building expenses as a part of its cost of stocks sold in computing gross earnings pursuant to Section 1(s) of the Gross Income Tax Act of 1933, as amended.

"3. The Gross Income Tax levied and collected upon those certain sales upon which Plaintiff's claim for refund was based was wrongful and illegal for the reason that it was contrary to Section 1(s) of the Gross Income Tax Act of 1933, as amended.

"4. Plaintiff is entitled to a judgment against the defendant in the principal amount of $49,839.70, together with interest at six per cent per annum from the date of overpayment to the date of payment of judgment; in the principal amount of $55,447.86, together with interest at six per cent per annum from the date of overpayment to the date of payment of judgment; in the principal amount of $63,514.94, together with interest at six per cent per annum from the date of overpayment to the date of payment of judgment; in the principal amount of $10,509.26, together with interest at six per cent per annum from the date of overpayment to the date of

payment of judgment; and in the principal amount of $69,982.54, together with interest at six per cent per annum from the date of overpayment to the date of payment of judgment for a total principal amount of $249,294.30, plus interest as stated.

IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED, that: The Plaintiff have and recover from defendant the sum of $49,839.70 together with interest at the rate of six per cent per annum from the date of overpayment to the date of payment of judgment, the sum of $55,447.86, together with interest at the rate of six per cent per annum from the date of overpayment to the date of payment of judgment, the sum of $63,514.94 together with interest at the rate of six per cent per annum from the date of overpayment to the date of payment of judgment, the sum of $10,509.26, together with interest at the rate of six per cent per annum from the date of overpayment to the date of payment of judgment the sum of $69,982.54, together with interest at the rate of six per cent per annum from the date of overpayment to the date of payment of judgment. Said interest is to be computed to the time this judgment is paid, all without relief from valuation or appraisement laws, together with the costs of this action."

The sole issue raised upon appeal is whether or not the trial court erred in its interpretation of the statute involved so as to render the judgment contrary to law. Thus, it is undisputed that the large body of factual evidence which was before the trial court contains sufficient evidence to support the findings of fact reached by the trial court. The issue evolves into whether or not the legal conclusions drawn from the facts are correct in terms of the statute in question. *See: Ind. Dept. Rev. v. Stark-Wetzel* (1971), 150 Ind.App. 344, 276 N.E.2d 904. Our function as a reviewing court is to give effect to the intention of the Legislature which enacted the law. *Gonser v. Bd. of Com'rs for Owen Cty.* (1978), Ind. App., 378 N.E.2d 425.

In interpreting a statute it must first be determined whether or not ambiguous language is contained therein. If clear and unambiguous language has been employed then no further construction or interpretation is necessary or appropriate. *Johnson v. Wabash Cty.* (1979), Ind.App., 391 N.E.2d 1139. After assessing the statute herein, IC 1971, 6–2–1–1(s), *supra*, it must be deemed to be clear and unambiguous. Within the statute there are no words of limitation used in conjunction with the phrase "costs of the stock sold", defining the term "cost" to mean the amount of original purchase plus transportation expenses only. If this was the legislative intent, use of a modifier such as "invoice cost," "original acquisitional cost" or "purchase cost" could have served to clearly designate the limitation. Instead, the Legislature used the term "cost of the stock . . . *sold*" which logically includes those items necessary to prepare the products for resale as argued by Food Marketing.

There is no expression by the Legislature that the words employed in this statute are to be given a technical meaning. Absent such legislative intent words in a statute are to be given their plain, ordinary and usual meaning. *Johnson v. Wabash Cty., supra; Gonsor v. Bd. of Com'rs for Owen Cty., supra.*

Moreover, to the extent that some doubt may be said to exist concerning the legislative intent, a statute imposing a tax is to be construed against the State and in favor of the taxpayer. *Gross Income Tax Div. v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415; *In re Est. of Cassner* (1975), 163 Ind.App. 588, 325 N.E.2d 487.

Substantial evidence before the trial court indicates that "cost of stock sold" was generally understood within both the

accounting profession and the food distributing industry to include those expenses directly related to the acquisition of goods, warehousing, and preparation for resale. These categories of expenses were used by taxpayer and other wholesale grocers in reporting to the New York Stock Exchange, the Securities and Exchange Commission and in preparing other financial reports when computing the "cost of sales." There was additional testimony given that the phrases "cost of stocks sold" and "cost of sales" or "cost of goods sold" were all common terms and used interchangeably. Other wholesale grocers testified that their companies consistently deducted the expenses here in dispute when computing their tax liability under Section 1(s) and were allowed to do so by the Indiana Department of State Revenue. This evidence amply demonstrates that, when taking the words at their usual meaning the expenses as categorized above by taxpayer would be considered "cost of stocks sold" encompassed by the statute, and that the Legislature intended to provide for a deduction in compliance with such general meaning.

Appellant has failed to demonstrate that the statute supports its position. Its narrow definition of the disputed phrase is not substantiated by any other language used in the Indiana Gross Income Tax Act. For example, Section 1(r) of the act uses the term "purchase price." Such language is consistent with the position taken by appellant here. Yet, "purchase price" was not used in Section 1(s). Also, testimony given by one of the Department's witnesses supports the allowance rather than denial of those deductions urged by taxpayer. Under such circumstances it cannot be stated as a matter of law that the trial court incorrectly applied IC 1971, 6–2–1–1(s) by allowing the disputed expenses to be calculated as costs of stock sold.

There is also merit in taxpayer's contention that to deny it these deductions for the years in question while allowing its competitors to take advantage of the same deductions during those years violates the principle of uniformity. This contention was supported by ample evidence of record, however, there is no need to further discuss the issue here in light of the above decision.

The judgment below serves to properly effect the legislative intent. The judgment is therefore affirmed.

Affirmed.

GARRARD, P. J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent. I agree with the Majority that the statute here in issue is clear and unambiguous. I also agree that there is no expression by the Legislature that any words in this statute should be given a technical meaning. Again agreeing with the Majority, the words in this statute should be given their plain, ordinary and usual meaning. I am compelled to dissent, however, since the Majority fails in this endeavor.

The Majority takes the stance that the plain, ordinary and usual meaning of "cost of the stock" is that this includes the *cost* of the stock, plus buying, warehousing, turnover, and building expenses. In support of this position, the Majority states:

"Substantial evidence before the trial court indicates that 'cost of stock sold' was generally understood within both the *accounting profession* and the *food distributing industry* to include those expenses directly related to the acquisition of goods, warehousing, and preparation for resale. These categories of expenses were used by taxpayer and other wholesale grocers *in reporting to the New York Stock Exchange, the Securities and Exchange Commission and in preparing other financial reports when computing the 'cost of sales.'* There was additional testimony given that the phrases 'cost of stocks sold' and 'cost of sales' or 'cost of goods sold' were all common terms and used interchangeably. Other wholesale grocers[1] testified that their companies

---

1. I assume that the Majority refers to this evidence of the wholesale grocery industry as support of the interpretation of their "plain meaning" of this statute. Otherwise, such evidence would be irrelevant to the Majority's rationale.

consistently deducted the expenses here in dispute when computing their tax liability under Section 1(s) . . . ." (Emphasis added.).

Clearly, this language indicates that the Majority is not giving the phrase "cost of the stock sold" a plain, ordinary and usual meaning, but is adopting and substituting a technical meaning. If, as the Majority states,[2] the language is clear and unambiguous, this Court is not at liberty to substitute language *believed* to fulfill the intent of the Legislature. *Ott v. Johnson* (1974), 262 Ind. 548, 319 N.E.2d 622; *United Farm Bureau Mutual Insurance Co. v. Runnels* (1978), Ind.App., 382 N.E.2d 1015.

As succinctly stated in *Suwanee Fruit & Steamship Co. v. Fleming* (Emer.Ct.1947), 160 F.2d 897, 899, "by a term of art is meant one which is used in a particular field with a precise technical meaning." Therefore, "costs of stock sold" and "cost of sales" or "costs of goods sold" being interchangeable (see Majority Opinion), are all terms of art. *E. Kohler, A Dictionary for Accountants*, 144 (5th ed. 1975). *See In re Sales & Use Tax Det. by State Tax Commissioner*, (N.D.1974), 225 N.W.2d 571; *I. Kellogg, How to Use Financial Statements*, § 24.1, 274 (1969); *H. Sellin, Attorney's Handbook of Accounting*, § 5.09[2], 5–36 (3d ed. 1979). The Majority Opinion clearly gives the phrase "cost of the stock sold" a technical, term of art, meaning contrary to its stated intent.

The Majority Opinion should have given the statutory phrase "cost of the stock sold," its plain, ordinary, and usual meaning. This statute reads, in pertinent part, as follows:

"[G]ross income shall be deemed to mean the gross earnings . . . [G]ross earnings shall be construed to mean the gross receipts derived from the sale at

wholesale of stocks . . . sold . . . *less the cost of the stock . . . sold* during such period, *without any deductions of any other kind or character.*" (Emphasis added.).

IC 6–2–1–1 (Burns Code Ed., Supp.1979). First, I must point out the following comment by the Majority:

"Within the statute there are no words of limitation used in conjunction with the phrase 'cost of the stock sold', defining the term 'cost' to mean the amount of original purchase plus transportation expenses only."

This statement may be true but misstates the issue. The State stipulated that the statute allows a deduction for cost of purchase plus "freight in." (See Majority Opinion.). *See Indiana Administrative Code*, Title 45, 1–1–79 (1979). The issue is whether *other* expenses may be deducted.

The words of limitation "without any deductions of any other kind or character" are in conjunction with and modify the phrase "cost of the stock . . . sold" and clearly limit it. Simply stated, the plain meaning of this statute is that the taxpayer's deduction is the *cost* of the stock with *no other deductions.* Cost is defined in *Webster's Third New International Dictionary*, 515 (1970);

"[C]ost . . . . a: the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered: CHARGE, PRICE . . . ."

The plain meaning of *cost* of the stock sold is the amount paid (price) by the taxpayer for the purchase of the stock. The conclusion is that the taxpayer should be allowed a deduction for its cost of the stocks sold equal to the purchase price (amount paid or acquisition cost) plus the "freight in" expenses stipulated to by the State.

**2.** The Majority seems to be of the opinion that the plain and ordinary meaning of the phrase in issue is the technical meaning of that phrase. That is, the plain and ordinary meaning of the phrase—cost of the stock sold—is *not* the "cost" of acquiring the stock but *is* "cost of the

stock sold" including the "cost" of acquiring the stock plus the expenses relating to warehousing and preparation of the stock. This raises serious doubts as to the presumption of unambiguity upon which the Majority Opinion is based.

There is a second and equally compelling reason for my dissent which also supports the "plain meaning" reason given above. This second reason is that I take issue with the Majority's statement that the State's "narrow definition of the disputed phrase is not substantiated by any other language used in the Indiana Gross Income Tax Act." To the contrary, the State's narrow definition of the cost of the stocks sold is not only substantiated but is consistent with other language found in the Indiana Gross Income Tax Act.

Subsections (m) through (u) of IC 1979, 6–2–1–1 (Burns Code Ed.) define gross income with subsection (s) (here in issue) which is but one of these nine. When called upon to construe phrases and words in a statute, this Court must construe them in relation to and in harmony with, the statute as a whole in order to carry out the intent and purpose of the Legislature. *Indiana State Highway Commission v. White* (1973), 259 Ind. 690, 291 N.E.2d 550; *Campbell v. Campbell* (1979), Ind.App., 388 N.E.2d 607.

When taken as a whole, subsections (m) through (u) clearly establish a concept of "gross income" to mean the gross receipts of the taxpayer. Gross,[3] in the Indiana *Gross* Income Tax Act, means just that. Indiana taxpayers coming within this Act are taxed upon their *gross* income as their taxable basis, IC 1978 6–2–1–2, & –3 (Burns Code Ed.), rather than upon a "net" income as their taxable basis as would be true under the federal income tax system. *See* Internal Revenue Code of 1954, §§ 1, 11, & 63.

Subsections (m) through (u) define the taxpayer's gross income in terms of gross receipts and then allow only *certain limited deductions.* For example, the primary subsection defining gross income—subsection (m)—states:

"The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received as compensation for personal services, including but not in limitation thereof, wages, bonuses, salaries, fees, commissions, gratuities (including the value of living expenses or rental of quarters furnished to the taxpayer) and the gross receipts of the taxpayer received from trades, businesses, or commerce, including admission fees or charges, and the gross receipts from the sale, transfer, or exchange of property, tangible or intangible, real or personal, including the sale of capital assets, or from the assignment or sale or rights, all receipts received from the performance of contracts, all receipts received as prizes and premiums, all receipts received from insurance, all amounts received as alimony, damages, or judgments, and all receipts received by reason of the investment of capital, including but not in limitation thereof, interest, discounts, rentals, royalties, dividends, fees, commissions, and receipts received from the surrender, sale, transfer, exchange, redemption of, or distribution upon, stock of corporations or associations, and all other receipts of any kind or character received from any source whatsoever, *and without any deductions on account of the return of capital invested, the cost of the property sold, the cost of materials used, labor cost, interest, discount, or commissions paid or credited, or any other expense whatsoever paid or credited, and without any deductions on account of losses, and without any other deductions of any kind or character, except that taxpayers reporting on an accrual basis may deduct bad debts in the same manner as provided in IC 6–2–1–49(b). . . ."* (Emphasis added.).

Note that the only allowed deduction is one for bad debts and then only for those taxpayers who use the accrual method of tax accounting.

Subsections (n) through (u) then define gross income for certain specific industries.

---

**3.** Gross: "1. without deductions (opposed to net)." *Random House Dictionary*, 624 (1969); "[A]n overall total exclusive of deductions . . ." *Webster's Seventh New Collegiate Dictionary*, 368 (1965). Gross Income: "revenues before deducting any expenses . . ." E. Kohler, *A Dictionary for Accountants*, 237 (5th ed. 1975).

The concept of the gross income consisting of the gross receipts of the taxpayer, however, is retained in these subsections. For example, subsection (n), which pertains essentially to the banking industry, states:

" 'gross income' shall be deemed to mean gross earnings . . . ."

Subsection (n) allows *no* deductions. And, Subsection (*o*) states:

"In case of insurance carriers, 'gross income' shall not include any part of gross income as defined in subsection (m) which becomes or is used to maintain a reserve or other policy liability, but only to the extent to which such reserve or other policy liability, is required by the laws of this state . . . ."

Again, *no* deductions are allowed. Subsection (p) states:

"In case of domestic casualty and fire insurance carriers the term 'gross income' shall be deemed to mean the gross earnings derived as premiums, interest, rents and dividends, and the gross earnings from the sales of assets computed each year in the business conducted by such carrier, but only so much of such gross earnings as does not become, or is not used to maintain a reserve or other policy liability, and only to the extent to which such reserve is required by the laws of this state . . . ."

And again, *no* deductions are provided.

Finally, subsection (r)—cited by the Majority for the proposition that subsection (s) has no specific language such as "purchase price"—states *in its entirety* that:

"In the case of persons engaged in the business of purchasing and selling whole grain and soybeans, in the event the United States government by any authorized officers, departments or agencies,

has by law, rule, regulation or directive, prescribed both a *purchase price* and a *sale price* thereby creating a specific margin between such purchase price and such sale price, gross income shall be deemed to mean *the specific margin so fixed by the United States government, without any deductions of any other kind or character*, and such persons shall be subject to the rate of taxation as prescribed in section 3(g) [6–2–1–3(g)] of this chapter." (Emphasis added.).

Again, the Act is consistent throughout. Subsection (r) takes gross receipts (sale price set by the federal government) *less a narrow and specific* deduction (purchase price set by the federal government) with *no* other deductions.

The State's "narrow" definition is not only supported by other language within the Act, but is supported by the Act as a whole. This "narrow" definition is also supported by the history of the Gross Income Tax Act in Indiana. In 1933, the first Indiana Gross Income Tax Act was enacted. Acts of 1933, Chapter 50. In 1935, the Indiana Supreme Court, facing the issue of whether the Act was constitutional, clearly distinguished the concept of Indiana's "gross income" from the federal concept of "net income." *Miles v. Dept. of Treasury* (1935), 209 Ind. 172, 199 N.E. 372. As stated in *Storen v. Jasper County Farm Bureau Co-Op. Ass'n* (1936), 103 Ind.App. 77, 81, 2 N.E.2d 432, 433:

"The act is known as the *Gross Income Tax Act, gross* having been defined to mean all." (Original emphasis.).

Then in 1938, again analyzing the Indiana Gross Income Tax Act,[4] the Indiana Supreme Court stated:

**4.** Indiana Gross Income Tax Act of 1933, Chapter 50, § 1(f) defined gross income as follows— note the similarity to current definition, IC 6–2–1–1(m), *supra*:

"The term 'gross income,' except as hereinafter otherwise expressly provided, means the gross receipts of the taxpayer received as compensation for personal services, and the gross receipts of the taxpayer derived from trades, businesses or commerce, and the gross receipts proceeding or accruing from

the sale of property, tangible or intangible, real or personal, or service, or any or all of the foregoing, and all receipts by reason of the investment of capital, including interest, discount, rentals, royalties, fees, commissions or other emoluments, however designated, and without any deductions on account of the costs of property sold, the cost of materials used, labor cost, interest or discount paid, or any other expense whatsoever, and without any deductions on account of losses."

"It is a tax upon total receipts without deductions of any sort, either 'on account of the costs of property sold, the cost of materials used, labor cost, interest or discount paid, or any other expense whatsoever, and without any deductions on account of losses.' . . ."

*Department of Treasury v. Crowder* (1938), 214 Ind. 252, 256, 15 N.E.2d 89, 91–92.

In its current form, The Indiana Gross Income Tax Act clearly follows its historical precedent. The intent and purpose of the Legislature is clearly established in IC 61–2–1–1 (Burns Code Ed., Supp.1979). Gross income is the taxpayer's gross receipts with few or no deductions. When such deductions are allowed, they are narrow and specific. Upon appeal, the State correctly argues this very point—a narrow definition of cost should be taken. This narrow definition should be adopted to be consistent and in harmony with the entire section defining gross income. To enlarge a deduction or to include further deductions not specifically enumerated by the Legislature is to defeat the intent of the Legislature.

There is a third and final reason upon which I base my dissent. The Majority states the following:

"Moreover, to the extent that some doubt may be said to exist concerning the legislative intent, a statute imposing a tax is to be construed against the State and in favor of the taxpayer. "*Gross Income Tax Div. v. Colpaert Realty Corp.* (1952), 231 Ind. 463, 109 N.E.2d 415; "*In re Est. of Cassner* (1975), 163 Ind.App. 588, 325 N.E.2d 487."

Actually, the Court in *Colpaert* stated:

"It must be borne in mind, in determining whether taxable gross income resulted from the transactions under consideration, that to constitute gross income the transactions must come clearly within statutory provisions defining such income. In case of doubt the statute will be construed against the state and in favor of the taxpayer. . . ."

231 Ind. at 468, 109 N.E.2d at 418. The rule, therefore, is that whether a taxpayer or a transaction is within the provisions of the Indiana Gross Income Tax Act is to be liberally construed against the state. This rule is and has been consistently followed in Indiana. *Walgreen Co. v. Gross Inc. Tax Div.* (1947), 225 Ind. 418, 75 N.E.2d 784; *Department of Treasury v. International Harvester Co.* (1943), 221 Ind. 416, 47 N.E.2d 150; *In re Estate of Cassner* (1975), 163 Ind.App. 588, 325 N.E.2d 487.

The issue in this case, however, is whether the taxpayer is to be allowed certain deductions; not whether the taxpayer is within the provisions of the Act. Under similar circumstances, the Pennsylvania Commonwealth Court stated the following:

"Appellants confuse the rule that where the issue is whether property is taxable or whether the individual is subject to taxation, all reasonable doubts must be resolved in favor of the taxpayer, . . . with the rule that where the power to tax is clear, and the taxpayer is within the taxing statute's general scope, language of exemption and deduction must be strictly construed." (Citations omitted.).

*Commonwealth v. Rohm & Haas Co.* (1977), 28 Pa.Cmwlth. 430, 435–36, 368 A.2d 909, 912.

In Indiana, it has been the long established rule that exemptions from taxation are strictly construed against the taxpayer. *Gross Inc. Tax Div. v. National Bank & Trust Co.* (1948), 226 Ind. 293, 79 N.E.2d 651; *City of South Bend v. University of Notre Dame Du Lac* (1879), 69 Ind. 344; *Indiana Dept. of State Rev. v. Ind. Gamma Gamma* (1979), Ind.App., 394 N.E.2d 187; *State, Dept. of Rev. Gross I. T. Div. v. Bethel San., Inc.* (1975), 165 Ind.App. 421, 332 N.E.2d 808; *Indiana Dept. of State Rev. v. Boswell Oil Co.* (1971), 148 Ind.App. 569, 268 N.E.2d 303; *Storen v. Jasper County Farm Bureau Co-Op., supra.* One principle foundation of the tax systems found in the United States is that the burden of the tax should be distributed with uniformity, equity, and justice. *Walters v. City of St. Louis* (1954), 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660; *Railway Co. v. Philadelphia* (1879), 101 U.S. 528, 25 L.Ed. 912; *State of Minnesota v. Federal Reserve Bank* (D.C.

Minn.1938), 25 F.Supp. 14; *City of Hartford v. Hartford Theological Seminary* (1895), 66 Conn. 475, 34 A. 483; *Dundee Corp. v. Lee* (1945), 156 Fla. 699, 24 So.2d 234; *Hanson v. Local Board of Review* (1942), 232 Iowa 390, 4 N.W.2d 384; *Behnke-Walker Business College v. Multnomah County* (1944), 173 Or. 510, 146 P.2d 614. The narrow and strict construction of tax exemptions further the goals of this principle by achieving two distinct but interrelated results:

    (1) The tax imposed upon any given taxable class is uniform and equitable;[5] and

    (2) The tax burden—imposed upon taxpayers as a whole—is spread as broadly as is possible, thus the tax burden per individual taxpayer is minimized.

This second result is essential to a tax system seeking to achieve the imposition of the tax burden in a uniform, equitable, and just manner. It is a logical and recognized principle that where one class is exempt from a tax burden, the tax burden is shifted to the other taxable classes. As stated by the New York Court of Appeals in *Johnson v. Smith* (1948), 297 N.Y. 165, 170, 77 N.E.2d 386, 388:

    "Equality and uniformity of taxation are the aim, for, if one taxpayer escapes payment, the burden is placed—disproportionately and unfairly—on another."

This result was recognized early in the history of Indiana tax law. In 1853, the Indiana Supreme Court, ruling that exemptions from taxation should be narrowly construed, stated:

    "The tax from which one class of persons is exempt, is thrown as an additional burden on the other classes. . . ."

*Orr v. Baker* (1853), 4 Ind. 86, 88.

The issue of whether tax deductions should be narrowly construed—and if so, whether against the state or the taxpayer— has never been addressed in Indiana. Based upon the same underlying principle for exemptions, I believe tax deductions

should be strictly construed against the taxpayer. Clearly a deduction is not an exemption. *State v. Smith* (1902), 158 Ind. 543, 63 N.E. 25; *Florer v. Sheridan* (1893), 137 Ind. 28, 36 N.E. 365. The allowed deduction, however, has the same end result as the allowed exemption. The enlarged deduction has the same end result as the enlarged exemption. In both instances, the tax burden of the individual taxpayer is decreased; but in so doing, the tax burden of all other taxpayers is increased. The allowed or enlarged deduction shifts the tax burden. Thus, like the tax exemption, the tax deduction should be narrowly construed.

Although Indiana has never addressed this issue, several other jurisdictions have. The general rule in all of the state courts found to have addressed this issue is that a deduction is similar to or in the nature of an exemption and should be strictly construed against the taxpayer. Analogously, these same courts hold that deductions are allowed only when granted by clear language and plainly authorized, and that deductions are not proper unless justification is to be found in the statute. *See, State v. Merchant's National Bank of Mobile* (1935), 230 Ala. 661, 162 So. 270; *Skelton v. B. C. Land Co.* (1974), 256 Ark. 961, 513 S.W.2d 919; *In re Tax Appeal of Von Hamm-Young Co.* (1941), 36 Haw. 11; *Palmer v. State Commission of Revenue and Taxation* (1943), 156 Kan. 690, 135 P.2d 899; *Bigelow v. Reeves* (1941), 285 Ky. 831, 149 S.W.2d 499; *Commissioner of Corporations and Taxation v. Adams* (1944), 316 Mass. 484, 55 N.E.2d 697; *In re Abbott's Estate* (1942), 213 Minn. 289, 6 N.W.2d 466; *State v. L. & A. Contracting Co.* (1961), 241 Miss. 783, 133 So.2d 546; *Tupelo Garment Co. of Tupelo v. State Tax Commission* (1937), 178 Miss. 730, 173 So. 656; *Cyprus Mines Corp. v. Madison County* (1977), 172 Mont. 116, 560 P.2d 1342; *Goodwin v. State Tax Commission* (1955), 146 N.Y.S.2d 172, 286 App.Div. 694, *af-*

**5.** *See, e. g., Walters v. City of St. Louis* (1954), 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660; *Kuhn v. Dept. of Treasury* (1968), 15 Mich.App. 364, 166 N.W.2d 697, *modified*, 384 Mich. 378, 183

N.W.2d 796; *Opinion of Justices* (1971), 111 N.H. 206, 278 A.2d 348; *New Mexico Electric Service Co. v. Jones* (1969), 80 N.M. 791, 461 P.2d 924.

*firmed,* 150 N.Y.S.2d 203, 1 N.Y.2d 680, 133 N.E.2d 711; *Green v. Oklahoma Tax Commission* (1940), 188 Okl. 168, 107 P.2d 180; *Home Stake Royalty Corp. v. Weems* (1935), 175 Okl. 340, 52 P.2d 806; *Christopher v. James* (1940), 122 W.Va. 665, 12 S.E.2d 813. As stated by the North Carolina Appellate Court:

> "Deductions are in the nature of exemptions; they are privileges, not matters of right, and are allowed as a matter of legislative grace. A taxpayer claiming a deduction must bring himself within the statutory provisions authorizing the deduction. . . ."

*Ward v. Clayton* (1969), 5 N.C.App. 53, 58, 167 S.E.2d 808, 811 *affirmed,* 276 N.C. 411, 172 S.E.2d 531. These jurisdictions clearly put the burden upon the taxpayer to bring himself within the statutory provisions of the deduction.

Every federal judicial circuit, as well as the Court of Claims, has ruled that deductions are to be strictly construed against the taxpayer. *See, Wilson v. United States* (1st Cir. 1969), 412 F.2d 694; *Standard Oil Co. v. United States* (2nd Cir. 1964), 338 F.2d 4; *Estate of Walling v. Comm'r* (3rd Cir. 1967), 373 F.2d 190; *Schubert v. Comm'r* (4th Cir. 1961), 286 F.2d 573; *Mayrath v. Comm'r* (5th Cir. 1966), 357 F.2d 209; *Kentucky Utilities Co. v. Glenn* (6th Cir. 1968), 394 F.2d 631; *Parker Pen Co. v. O'Day* (7th Cir. 1956), 234 F.2d 607; *Oates v. Comm'r* (8th Cir. 1963), 316 F.2d 56; *A B C Brewing v. Comm'r* (9th Cir. 1955), 224 F.2d 483; *Calvin v. United States* (10th Cir. 1965), 354 F.2d 202; *Lenkin v. District of Columbia* (D.C.Cir. 1972), 461 F.2d 1215; *Ritter v. United States* (Ct.Cl.1968), 393 F.2d 823, *cert. denied,* 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115.

The federal judiciary has established that deductions, like exclusions, are a matter of legislative grace and that the taxpayer, therefore, has the burden to establish a right to the deduction under a provision clearly allowing the deduction. *See, e. g., Commissioner v. National Alfalfa Dehydrating & Milling Co.* (1974), 417 U.S. 134, 94 S.Ct. 2129, 40 L.Ed.2d 717; *Commission-er v. Jacobson* (1949), 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477; *Deputy v. Du Pont* (1940), 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; *Monfore v. United States* (1977), 214 Ct.Cl. 705; *C. A. White Trucking Co. v. Comm'r* (5th Cir. 1979), 601 F.2d 867; *Kirk v. Comm'r* (D.C.Cir. 1970), 425 F.2d 492, *cert. denied,* 400 U.S. 853, 91 S.Ct. 53, 27 L.Ed.2d 91; *Rolwing-Moxley Co. v. United States* (E.D.Mo.1978), 452 F.Supp. 385, *affirmed,* 589 F.2d 353 (8th Cir.).

The overwhelming rule—in those jurisdictions considering the issue—is, therefore, that deductions should be narrowly and strictly construed against the taxpayer claiming the deduction. The taxpayer has the burden to prove that it is clearly within the statutory provisions allowing the deduction. In addition to being the overwhelming rule, it is a rule which furthers the underlying principle that a system of taxation should be uniformly applied and equitable and just to all classes of taxpayers as well as taxpayers as a whole. As stated by the United States *Supreme Court in Railway Co. v. Philadelphia* (1879), 101 U.S. 528, 537, 25 L.Ed. 912:

> "Taxation is an act of sovereignty to be performed, so far as it conveniently can be, with justice and equality to all. . . Common burdens should be sustained by common contributions, regulated by fixed rules, and be apportioned, as far as possible, in the ratio of justice and equity. . . ." (Citations omitted.).

Indiana should adopt this narrow rule of construction. The Majority should have used the rule of narrowly construing the deduction against the taxpayer. The taxpayer sought to enlarge a deduction clear and unambiguous on its face. The taxpayer should have had the burden to prove that the deductions claimed were clearly within the provisions of IC 6–2–1–1(s). The trial court and the Majority imposed the burden of proof upon the wrong party. The majority construed the statute here in issue against the State and in favor of the taxpayer. This was clearly error.

I respectfully dissent.